[Crim. No. 20000. First Dist., Div. Three. Aug. 20, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOHN VILLA, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Alfred J. Brandi, Acting Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DOSSEE, J.*—In this case we find that the prosecutor acted unprofessionally, indeed childishly, on several occasions at trial. Only due to the overwhelming evidence of guilt do we find that his misconduct does not justify reversal.

Michael John Villa was convicted by a jury of assault with intent to commit rape (Pen. Code, § 220) and false imprisonment by means of force or menace (Pen. Code, §§ 236-237). He was sentenced to the upper term of six years for the first offense and to three years for the latter offense, execution of which was stayed (Pen. Code, § 654).

Witnesses called by the prosecution described the following pertinent events. At approximately 2:15 a.m. on the morning of March 6, 1979, Ann M., a purser and head flight attendant for Pan Am Airlines returned to her condominium complex in Mountain View after spending an evening with a colleague. She paid no attention to a car that entered the parking lot behind her and, in a hurry to get upstairs, she parked just outside her entrance rather than in the security area beneath the building. A man grabbed her before she reached her apartment, put his hand over her mouth and pulled her to the side of the building. She struggled and screamed. A neighbor heard a woman scream "Please don't" and "help" and he called the police. Each time Ann M. screamed, her assailant, whom she identified as Villa, hit her in the face with his fist. Villa fondled her breasts, opened her brassiere, forced her to the ground, and lay on top of her before Ann M. was able to struggle

---

*Assigned by the Chairperson of the Judicial Council.

free. Villa asked for money, Ann M. ran, collapsed against a car, screamed, and was forced to the ground again. Finally the police arrived. From 75 yards Officer Stewart observed Villa pressing Ann M. against a vehicle. He heard her say: "Please leave me alone. Don't hurt me." The next thing Stewart observed was Ann M. on the ground being pulled to her feet by Villa. Stewart described Ann M. as disheveled, with dirt on her clothes, and her blouse open. A second officer described Ann M. as "hysterical and frightened." Stewart asked Villa what the problem was and Villa answered that he was trying to get Ann M. home. Villa then ran from the officers and was apprehended. The left side of Ann M.'s face was swelling and discoloring rapidly. Photographs of these injuries were admitted into evidence.

Villa testified on his own behalf as follows. On the night in question he attended a boxing match in San Francisco with 15 acquaintances. The match ended at approximately 1:30 a.m. whereupon he started home to San Jose on Highway 101. As he attempted to pass a rhythmically swerving and slow-moving Volkswagen, the driver, a woman, indicated by waving, slowing down and pulling over that she wished him to pull over. He did. She was sobbing and asked him to follow her home. He did. When they exited their vehicles she put her hand on his shoulder and requested an escort to her door. She then wanted Villa to buy some liquor but he informed her that all stores were closed. She fell down several times. She got angry and loud. She leaned against a car and fell down again.[1] The police arrived just as Villa helped her up. Villa denied undoing the woman's bra or hitting her hard enough to cause swelling. Asked why Ann M. would lie about what had happened, he answered that it was perhaps because he had slapped her.

Several instances of prosecutorial misconduct occurred in the presence of the jury. The most serious involved a series of insinuations by the prosecutor to the effect that he had damaging evidence regarding Villa's prior sexual behavior. With Villa on the stand defense counsel asked him whether he and his wife still enjoyed sexual relations. The prosecutor responded: "Your Honor, if he wishes to go into this area I have very relevant evidence about what happened when he was living

---

[1] A number of witnesses were asked to comment on Ann M.'s state of intoxication. Ann M. testified that over the course of the evening she had had one glass of wine and three glasses of Grand Marnier but was not intoxicated. Her companion that evening corroborated this. The police officers thought she was a bit unsteady on her feet but not drunk. A nurse in the apartment complex whom Ann M. went to for support after the police left observed no intoxication.

with his wife." The court warned against speeches but upheld a relevancy objection. Defense counsel then elicited from Villa the information that he was living with a woman on the day of the incident in question. The prosecutor asserted: "I'm going to object on the grounds of relevancy unless counsel is offering this to establish that because he was living with a woman he wouldn't go out after another woman, because if that is the purpose he is offering it, I have rebuttal evidence on that." The court sustained the relevancy objection without admonishing the prosecutor. During closing argument defense counsel implied that he could give a damaging explanation for Ms. Ann M.'s decision to have Villa prosecuted. The prosecutor interrupted: "Oh, if counsel wishes to go outside of the record and bring in outside evidence, I certainly have evidence that I would like to bring in."

Miscellaneous instances of misconduct are also alleged. On cross-examination Villa denied causing Ann M.'s facial injuries. The prosecution asked: "Q. When you were finished with her, those were the injuries she had, isn't that a fact? A. When I was finished with her? I don't understand . Q. When you were finished attempting to rape her." A bit later defense counsel made a wisecrack. The prosecutor retorted: "Somehow I fail to see the humor of the situation where a woman has been smashed in the face." Finally, during his closing argument, the prosecutor referred to Villa as an "animal" and compared Ms. Ann M.'s being trapped to the prosecutor's own experience in Vietnam.

At the outset it must be noted that the Attorney General's brief states that at trial Villa did not "assign as misconduct" the instances related above. ■ Instances of prosecutorial misconduct may be raised as errors on appeal only if they are objected to in timely fashion at trial or if the harmful effect of the misconduct could not have been obviated by a timely cautionary instruction by the trial court. (*People v. Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) However, the record clearly shows that Villa's trial counsel expressly and contemporaneously objected to each and every comment alleged as error, and that he did so on grounds of prejudice or unfairness. The contentions are legitimately before this court.

■ The prosecutor's insinuations that he had in his possession as yet undisclosed but highly relevant and damaging evidence regarding Villa's prior sexual conduct clearly constituted misconduct. In *People v. Bolton* (1979) 23 Cal.3d 208, 212 [152 Cal.Rptr. 141, 589 P.2d 396], defense counsel had been allowed to impeach the victim of a nonfatal

shooting incident with the latter's prior felonies. In his closing argument to the jury the prosecutor hinted that but for certain rules of evidence he could show that the defendant was "just as bad a guy." (*Id.*, at p. 212, fn. 1.) The Supreme Court held: "There is no doubt that the prosecutor's statement constituted improper argument, for he was attempting to smuggle in by inference claims that could not be argued openly and legally. In essence, the prosecutor invited the jury to speculate about—and possibly base a verdict upon—'evidence' never presented at trial. Appellant, in fact, had no prior criminal record.

"Closing argument presents a legitimate opportunity to 'argue all reasonable inferences from evidence in the record.' (ABA Standards, The Prosecution Function (1971) std. 5.8(a) (hereafter cited as Prosecution Function).) However, this court has for a number of years repeatedly warned 'that statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct.' (*People* v. *Kirkes* (1952) 39 Cal.2d 719, 724 [249 P.2d 1]; see also *People* v. *Taylor* (1961) 197 Cal.App.2d 372, 381-384 [17 Cal.Rptr. 233].)

"Prosecution Function standard 5.9 specifically states: 'It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record. . . .'

"In the present case, the prosecutor implied that there was additional evidence about the appellant's past known to him but unavailable to the jury. These implications tended to make the prosecutor his own witness —offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, 'although worthless as a matter of law, can be "dynamite" to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence.' (Vess, *Walking a Tightrope: A Survey of Limitations On The Prosecutor's Closing Argument* (1973) 64 J.Crim.L. & Criminology 22, 28; see also Crump, *The Function and Limits of Prosecution Jury Argument* (1974) 28 Sw.L.J. 505, 517-518.)" (23 Cal.3d at pp. 212-213 (fn. omitted).) In addition *Bolton* overruled cases suggesting that "'bad faith must be shown to establish the existence of misconduct' [citations]." For the first time the court adopted the position that "'injury to appellant is nonetheless an injury because it was committed inadvertently rather than intentionally' [citations]." (23 Cal.3d at pp. 213-214.)

As indicated in the cases summarized in the margin the appellate courts have, since *Bolton*, liberally characterized various prosecutorial excesses as "misconduct."[2] Those cases finding no misconduct are easily distinguished.[3] Based on these cases, there is no doubt that the references to evidence not before the jury were error and it is at least arguable that the prosecutor's several subjective indictments of Villa throughout the trial were also within the broad category of misconduct.

■ Prosecutorial misconduct, however, will not be grounds for reversal unless it is shown to be prejudicial. "Reversal of judgment is designed not so much to punish prosecutors as to protect the fair rights of defendants." (*Bolton, supra,* 23 Cal.3d at p. 214.) The *Bolton* court held that either of the two traditional tests of prejudice could apply to a particular instance of misconduct: "Under traditional application of this state's harmless error rule, the test of prejudice is whether it is 'reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant. [Citations.]' (*People v. Beivelman* (1968) 70 Cal.2d 60, 75....) However, if federal constitutional error is involved, then the burden shifts to the state 'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' (*Chapman v. California* (1967) 386 U.S. 18, 24....)" (23 Cal.3d at

---

[2]See, e.g., *People v. Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468] (expression of personal disbelief in defendant's alibi); *People v. Butler* (1980) 104 Cal. App.3d 868, 879 [162 Cal.Rptr. 913] (misstatement of law during argument to effect that defendant's demonstrative model was not evidence); *People v. Piper* (1980) 103 Cal.App.3d 102, 112-113 [162 Cal.Rptr. 833] (failure to delete page of exhibit showing defendant's performance on parole even if failure accidental); *People v. Galloway* (1979) 100 Cal.App.3d 551, 560 [160 Cal.Rptr. 914] (suggestion of guilt by association improper where prosecutor, not evidence, asserts that defendant's associate guilty); *People v. Carpenter* (1979) 99 Cal.App.3d 527, 532 [160 Cal.Rptr. 386] (opening argument improperly allowed inference that defendant had taken and failed polygraph where any evidence to that effect inadmissible); *People v. Ortiz* (1979) 95 Cal.App.3d 926, 934 [157 Cal.Rptr. 448] (argument that defendant, a ritual slaughterer of animals for religious purposes, could not distinguish between animals and humans); *People v. Martinez* (1978) 82 Cal.App.3d 1, 18 [147 Cal.Rptr. 208] (pre-*Bolton*: jury told it will always regret it if it acquits defendant).

[3]*People v. Green, supra,* 27 Cal.3d at pages 35-36 (expressing hope that jury would reach same verdict prosecutor had reached months before); *People v. Powell* (1980) 101 Cal.App.3d 513, 522 [161 Cal.Rptr. 803] (proper rebuttal to state that defense counsel stories re other cases of misidentity a customary ploy); *People v. Wills-Watkins* (1979) 99 Cal.App.3d 451, 457 [160 Cal.Rptr. 289] (eliciting information that defendant was once suspected as Hillside Strangler conveyed that defendant *not* latter; defense also raised the matter).

p. 214.) In a footnote the majority stated, without so holding, that it seemed "probable" that *Chapman's* reasonable doubt standard applied to the prosecutor's improper suggestion that the defendant had a prior criminal record: "Though this court need not decide this issue in the present case, it seems probable that the prosecutor's attempt to characterize the defendant as a 'bad guy' in violation of the rules of evidence was a violation also of defendant's Sixth Amendment right of confrontation. The prosecutor, serving as his own unsworn witness, is beyond the reach of cross-examination. However, recent decisions of the Supreme Court have noted the importance of cross-examination to the Sixth Amendment right of confrontation. 'If one were to translate the Confrontation Clause into language in more common use today, it would read: "In all criminal prosecutions, the accused shall enjoy the right to be present and to cross-examine the witnesses against him."' (*Dutton* v. *Evans* (1970) 400 U.S. 74, 95...; see also *California* v. *Green* (1970) 399 U.S. 149, 158-159...; *Bruton* v. *United States* (1968) 391 U.S. 123, 136....) And, although the Supreme Court has allowed certain out-of-court statements, never subjected to cross-examination, to be admitted at trial, it has indicated that the absence of cross-examination at the time the out-of-court statement was made is not crucial 'as long as the declarant is testifying as a witness and subject to full and effective cross-examination' at trial. (*California* v. *Green, supra*, 399 U.S. 149, 158....) [¶] Therefore, in cases such as the present one, a strong argument exists that a violation of a constitutional right is involved and the *Chapman* standard of prejudice should be applied."[4] (*Bolton, supra*, 23 Cal.3d at pp. 214-215.)

■ Assuming that the *Chapman* standard is applicable here to the more egregious errors complained of, it nonetheless appears that the improprieties could not have been harmful. The subject matter of the errors was not, of course, insignificant since a fair inference from the prosecutor's remarks was that he had evidence of prior sexual offenses by Villa. (Cf. *People* v. *Modesto* (1967) 66 Cal.2d 695, 714 [59 Cal. Rptr. 124, 427 P.2d 788]; *Galloway, supra*, 100 Cal.App.3d at pp. 560-565.) Nor was this impact cured or relieved. The court gave the

---

[4]*Bolton* itself concluded that no prejudice had occurred under either test given the special circumstance of that case wherein the defendant had admitted the killing but had pleaded self-defense and by his own admissions had established the insufficiency of the defense as a matter of law. The court concluded that "[s]ince appellant's theory of self-defense was insufficient as a matter of law, the prosecutor's misconduct must be held harmless beyond a reasonable doubt." (23 Cal.3d at p. 215.)

usual instruction that counsel's statements are not evidence and defense counsel himself gave the instruction after the prosecutor had interrupted the former's closing argument. But the real damage was done while Villa was undergoing direct examination. And at that time, rather than admonishing the jury that what the prosecutor was insinuating should be disregarded the court sustained the relevancy objections the prosecutor had coupled to his improper statements. (Cf. *Butler, supra*, 104 Cal.App.3d at p. 880; *Galloway, supra*, 100 Cal.App.3d at p. 565; *Carpenter, supra*, 99 Cal.App.3d at p. 532.)

The nonprejudicial effect of the misconduct has only to do with the lopsided weight of the evidence. While it is true that essentially the jury had to choose between Ann M.'s story and appellant's it is fairly incontestable that appellant's story bordered on the incredible. The details testified to by Ann M., on the other hand, were corroborated as much as was possible in the absence of eyewitnesses. Her colleague corroborated that she was not upset, crying, or intoxicated when she left the Hilton Inn, a neighbor she had never met, even by the time of trial, corroborated that she had screamed for help in the parking lot, photographs and several witnesses attested to the beaten-up condition of her face, and the police corroborated in a number of ways that a struggle had taken place. In addition Villa had no credible explanation for his abortive attempt at fleeing from the police.

We are therefore convinced beyond a reasonable doubt that without the errors complained of the jury would still have entered the verdicts it did.[5] (Cf. *Piper, supra*, 103 Cal.App.3d at p. 113; *Powell, supra*, 101 Cal.App.3d at p. 522, fn. 3.) This conclusion notwithstanding we join with the Supreme Court in issuing this caveat: "This court wishes to emphasize that our refusal to reverse appellant's conviction should in no way be taken as condonation for the deputy district attorney's misconduct. A closer case, marred by the same misconduct, might well require reversal. Therefore, this court again 'warn[s] prosecutors that they cannot continue with impunity to engage in [improper] conduct thinking that appellate courts will save them by applying the harmless error rule. Convictions have been reversed before, and will continue to be, whenever prejudicial misconduct occurs.' (*People v. Lambert, supra*, 52

---

[5]This conclusion takes into account the cumulative impact of all of the instances of misconduct alleged. The less than temperate utterances by the prosecutor which, standing alone, would be judged by the nonconstitutional test for prejudice, were not of a kind to influence a verdict except perhaps in the closest of cases. Moreover, on each of the occasions in question the trial court sustained defense counsel's objection and indicated in some fashion that the prosecutor's technique was somewhat excessive.

Cal.App.3d 905, 912 [125 Cal.Rptr. 404]; see also *People* v. *Linden* (1959) 52 Cal.2d 1, 27....)" (*Bolton, supra*, 23 Cal.3d at p. 215 (fn. omitted).)

One additional point is raised. The trial court awarded good time/work time credits on a basis of one day of credit for every *three* served in presentence confinement. Applying the equal protection analysis employed in *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], the proper ratio is one to two. We call this to the attention of the Department of Corrections which will handle the adjustment administratively. (*People* v. *Sage, supra*, 26 Cal.3d 498, 508.)

With the exception of the presentence credit recomputation to be handled by the Department of Corrections, appellant's conviction is affirmed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied September 19, 1980.