Filed 8/24/16  P. v. Ramirez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>RAFAEL RAMIREZ,<br><br>     Defendant and Appellant. | F069323<br><br>(Super. Ct. No. MCR043016C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

John J. Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Rafael Ramirez appeals from his convictions for residential burglary, robbery, making criminal threats, and two counts of misdemeanor assault.[1] Ramirez argues that misconduct by a juror violated his right to trial by an impartial jury. He contends the trial court's failure to investigate the misconduct was an abuse of discretion. Next, he argues the prosecutor committed misconduct by not promptly reporting the juror's misconduct to the court. Finally, he asserts his attorney was ineffective in failing to move for a new trial on the basis of the juror's misconduct. We reject his contentions and affirm the judgment.

## *FACTS AND PROCEDURAL HISTORY*

Ramirez was charged, in a second-amended information filed in the Madera County Superior Court, with residential burglary (Pen. Code, § 459,[2] count 1); robbery (§ 211, count 2); two counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), counts 3 & 4); and making criminal threats (§ 422, count 5).[3]

A jury found Ramirez guilty on counts 1, 2, and 5; he was also found guilty of the lesser offense of misdemeanor assault on counts 3 and 4. (§ 241, subd. (a).)

The court sentenced Ramirez to eight years in prison, as follows: 16 months for residential burglary, six years for robbery, and eight months for making criminal threats.

On March 19, 2012, Miguel Rodriguez and his sister, Ruby Rodriguez, saw Ramirez and Isaac Camacho at a window of their apartment. Ruby and Miguel then

---

[1]Armando Ramirez, coappellant in this matter, voluntarily dismissed his appeal on May 22, 2015.

[2]Subsequent statutory references are to the Penal Code unless otherwise specified.

[3]The second-amended information also charged Armando Ramirez with counts 1, 2, 3, and 5, and Erick Miranda with counts 1, 3, 4, and 5. Armando Ramirez was found guilty on counts 1, 2, and 5; he was also found guilty of the lesser offense of misdemeanor assault (§ 241, subd. (a)) on count 3. Miranda was acquitted of all charges at trial.

found eight or nine people gathered outside, including Ramirez and Camacho, and also Armando Ramirez (Armando), and Erick Miranda (Miranda), among others.

Ramirez yelled at Miguel because Miguel had earlier taken the police to Ramirez's house in order to retrieve a stolen cell phone that Miguel had given to Ramirez. Armando called Miguel a "bitch" and threatened to "fuck [him] up" because he was a "fucking rat."

Ramirez punched Miguel in the face. Ramirez also punched Ruby when she tried to get him away from Miguel. Armando placed Miguel in a choke hold. Ramirez, Miranda, and two other persons hit and punched Ruby.

Armando grabbed Miguel by his shirt, ordered him in the house, and directed him to "give me all your shit ...." Ramirez and Armando went into the house. Armando took a pit bull puppy from Miguel's room. Ruby later noticed that her laptop, a cell phone, and some cables were also missing.

As Ramirez and the others left the apartment, Ramirez warned Ruby not to call the police; Ramirez and Armando threatened to kill both Miguel and Ruby if either of them were to call the police.

Ruby and Miguel both suffered injuries to their faces and heads. Ruby also had bruising on her stomach. Miguel and Ruby were afraid for their safety and moved out of their apartment the following day.

## *DISCUSSION*

Ramirez argues that misconduct by Juror No. 8 violated his right to trial by an impartial and unbiased jury. He contends the trial court's failure to investigate the misconduct was an abuse of discretion. Next, he argues the prosecutor committed misconduct by not promptly reporting the juror's misconduct to the court. Finally, he asserts his attorney was ineffective in failing to move for a new trial on the basis of the juror's misconduct. We reject these contentions.

3.

## I.    *Background*

During voir dire proceedings, the court instructed the prospective jurors, including Juror No. 8, as follows:  "I'll also ask you folks if you know any of the folks in the courtroom, whether it's counsel, or the defendants, court staff, me; if so, please raise your hands.  I see no hands in that regard."  Later, the court asked the prospective jurors to raise a hand if anyone had "any belief or feeling toward any of the parties, attorneys, or witnesses that would make it impossible or even difficult for [them] to act fairly and impartially" and repeated his request for a show of hands if any prospective juror was "familiar with anyone in the courtroom."  No hands were raised.  The court also asked prospective jurors to raise a hand if the outcome of the case would affect them or anyone near to them.  Again, no hands were raised.

During the court's voir dire, Juror No. 8 stated she was an elementary school principal and lived in Madera with her husband, who had retired from the military and was self-employed.  Juror No. 8 also revealed that 30 years ago, when she was young, an uncle of hers went to prison in Arkansas.  She said she nonetheless could be fair and impartial in the instant case.

The prosecutor told the court, at Ramirez's sentencing hearing on April 30, 2014, about an incident with Juror No. 8 when, after conclusion of trial and dismissal of the jury, he and counsel for one of the codefendants were talking to her.[4]  The prosecutor stated he had previously e-mailed Ramirez's counsel about the incident but did not know whether counsel received the e-mail.  Ramirez's counsel stated he had heard about the incident from another codefendant's counsel.

The prosecutor had the following exchange with the court:

"MR. PETERSEN [the prosecutor]:  [A]fter the trial, Juror Number 8 told me that about halfway of the trial she recognized me as a member of a group that helped move my stuff in.  No relationship beyond

---

[4]The jury reached its verdict on April 2, 2014.

4.

that. About halfway in, she said Oh, I recognized you, me and a bunch of other people helped myself, David Petersen, get moved in so I just—

"THE COURT: Moved into your home?

"MR. PETERSEN: Into my home when I first moved here, your Honor.

"THE COURT: All right. Thank you very much. [¶] Mr. Esquivel, did you get that information?

"MR. ESQUIVEL [Ramirez's counsel]: I think I heard it from Mr. Cummings [codefendant's counsel] recently. I don't know that it's an issue. I'm not going to make an issue of it today but I don't know what else to say beyond that.

"THE COURT: It's a fact.

"MR. ESQUIVEL: It's a fact.

"THE COURT: All right. Thank you very much. You have been made aware of that.

"MR. ESQUIVEL: Yes.

"THE COURT: All right. Thank you very much. [¶] And I appreciate that disclosure, Mr. Petersen. I don't find anything in that that will cause me to make any changes in the judgment as I've just described it."

Thereafter, the court gave additional advisements to Ramirez and then concluded the judgment proceedings.

A similar discussion took place at the sentencing of Armando Ramirez, the only other codefendant convicted in the case:

"MR. PETERSEN: And Your Honor, as previously mentioned on the Rafael matter, I just want to bring for the record, I have spoken to Mr. Cummings previously. About Juror No. 8, again, about halfway through the trial she recognized that she had moved some of my items in when I moved here to Madera. I did not ever recognize her, even after she told me this information, I still did not recognize her, so ….

"THE COURT: All right, thank you, Mr. Petersen. [¶] Mr. Cummings, any comment in that regard?

"MR. CUMMINGS [counsel for Armando Ramirez]: I think I'll leave it to the appellate attorney. I'm not going to file any motions or anything. Maybe an appellate attorney might think I should have acted on it.

"THE COURT: All right, that you for—

"MR. PETERSEN: That was mentioned after the trial when me and Mr. McGurty [counsel for codefendant, Miranda] spoke briefly with the juror, Your Honor.

"THE COURT: All right, thank you very much.

"MR. PETERSEN: And there was no contact with the jury during the trial, other than in the courtroom, Your Honor.

"THE COURT: Thank you."

## II.    *Analysis*

As noted above, Ramirez contends that misconduct by Juror No. 8 violated his right to trial by an impartial and unbiased jury, the trial court abused its discretion by failing to conduct a further inquiry, the prosecutor engaged in misconduct, and counsel was ineffective for failing to move for a new trial.

Ramirez's trial counsel was apprised of the prosecutor's interaction with Juror No. 8 but did not request that the court take any action based on the incident, nor did he move for a new trial. Accordingly, Ramirez's claims related to alleged juror misconduct are forfeited. (*People v. Russell* (2010) 50 Cal.4th 1228, 1250; *People v. Wisely* (1990) 224 Cal.App.3d 939, 947.) His prosecutorial-misconduct claim is also forfeited given counsel's failure to object on this basis in the trial court. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1333.) In any event, we reject all of Ramirez's contentions on the merits.

### A.    *Juror misconduct*

A criminal defendant has a constitutional right to a unanimous verdict by an impartial jury. (*People v. Wilson* (2008) 44 Cal.4th 758, 822.) Ramirez alleges his

constitutional rights were infringed because Juror No. 8 deliberately concealed the fact that the prosecutor was known to her, and her actions masked a pro-prosecution bias.

The underlying facts, however, do not support a prima facie case of juror misconduct. There is nothing to suggest that Juror No. 8 lied about or deliberately concealed a prior fleeting acquaintance with the prosecutor, during voir dire, in violation of her oath as a juror. (*People v. Blackwell* (1987) 191 Cal.App.3d 925, 929 [intentional concealment of relevant facts or giving false answers in voir dire is misconduct].) Juror No. 8's reported comments indicate only that she recognized the prosecutor halfway through the trial, an entirely plausible proposition in light of the fact that she had but a single, prior encounter with him. The limited nature of the relationship is reflected in the fact that, when the juror told the prosecutor about the circumstances of their prior meeting, *he still did not recognize her*. This record leads us to conclude that Juror No. 8's failure to report, during jury selection, her prior encounter with the prosecutor, was an honest mistake and not a deliberate attempt to conceal bias. Further, there is no evidence that Juror No. 8's inadvertent mistake masked an actual pro-prosecution bias. (See *In re Hamilton* (1999) 20 Cal.4th 273, 300 ["What is clear is that an honest mistake on voir dire cannot disturb a judgment in the absence of proof that the juror's wrong or incomplete answer hid the juror's actual bias."].)

The fact that the juror, when she eventually recognized the prosecutor, did not affirmatively notify the court of this belated realization also does not, by itself, indicate that the juror deliberately withheld that information from the court so as to hide a pro-prosecution bias. (See *People v. Merriman* (2014) 60 Cal.4th 1, 96-98 [juror who failed to reveal in response to written question, and to affirmatively disclose during voir dire, that she had distant relative in law enforcement, made honest mistake that did not hide an actual pro-law-enforcement bias].)

On the contrary, the fact that Juror No. 8 voluntarily disclosed she had eventually recognized the prosecutor, in the presence of a codefendant's counsel after the trial,

indicates that her failure to do so earlier was inadvertent and that she was attempting to perform her duties in good faith and was not biased. (See *In re Hamilton*, *supra*, 20 Cal.4th at p. 300 ["good faith when answering voir dire questions is the most significant indicator that there was no bias"].) "If [Juror No. 8] had formed improper opinions about the case and … act[ed] in ways prejudicial to the defense, common sense suggests [she] would have simply remained silent," rather than publicly revealing her prior connection with the prosecutor. (*People v. Ray* (1996) 13 Cal.4th 313, 343.) Accordingly, under *In re Hamilton*, reversal is not warranted. (See *In re Hamilton*, *supra*, at p. 300.)

Ramirez further argues that Juror No. 8's misconduct raised a presumption of prejudice that has not been rebutted. A juror's purported misconduct "raises a rebuttable presumption that the defendant was prejudiced and may establish juror bias." (*People v. Merriman*, *supra*, 60 Cal.4th at p. 95.) The cases establishing the presumption of prejudice involve actual misconduct, or, put differently, "'true jury misconduct.'" (*People v. Cooper* (1991) 53 Cal.3d 771, 835, quoting *People v. Boyd* (1979) 95 Cal.App.3d 577, 585.) "When a person violates his oath as a juror, doubt is cast on that person's ability to otherwise perform his duties. [Citation.] The presumption of prejudice is appropriate in those situations." (*People v. Cooper, supra,* at pp. 835-836.) Here, there is no evidence of deliberate concealment of a material fact in jury selection or thereafter, nor of actual bias, and a presumption of prejudice is not raised. (See *Merriman*, *supra*, at pp. 96-98 [no presumption was applied where there was no deliberate concealment and no actual bias].)

### B. Trial court's failure to investigate

Ramirez next claims the court's failure to investigate the purported misconduct was an abuse of discretion. "The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court. [Citation.] The court does not abuse its discretion simply because it fails to investigate any and all new information

obtained about a juror during trial. [¶] As our cases make clear, a hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his duties and would justify his removal from the case." (*People v. Ray*, *supra*, 13 Cal.4th at p. 343.) Here, not only did the allegations of misconduct arise after the trial was over and the jury had been dismissed, but the specific conduct at issue did not rise to a level at which a juror's ability to perform her duties would automatically be compromised. (See, e.g., *People v. Kaurish* (1990) 52 Cal.3d 648, 694 [no hearing required absent evidence that juror's derogatory remark reflected bias against defense as opposed to impatience with proceedings].) The trial court did not abuse its discretion in leaving any investigation to the parties.

### C. *Prosecutorial misconduct*

Ramirez argues the prosecutor committed misconduct because he "learned of the juror's misconduct immediately after trial and waited to disclose the information to the court until after the court had pronounced judgment." He further argues that, "[i]n the absence of the prosecutor's misconduct [Ramirez] would have reasonably been granted a new trial." We reject his contention.

"In general, a prosecutor commits misconduct by the use of deceptive or reprehensible methods to persuade either the court or the jury. [Citations.]" (*People v. Price* (1991) 1 Cal.4th 324, 447.) "Prosecutorial misconduct, however, will not be grounds for reversal unless it is shown to be prejudicial." (*People v. Villa* (1980) 109 Cal.App.3d 360, 366.) "'[T]he judgment will not be reversed [on state law grounds] unless, after a review of the entire cause, it appears it is "reasonably probable" that a result more favorable to the defendant would have occurred had the district attorney refrained from the misconduct in question [citations].'" (*People v. Bryden* (1998) 63 Cal.App.4th 159, 182.)

Here, the prosecutor reported the juror's conduct to defendant's counsel prior to the sentencing hearing, and defense counsel indicated at the hearing that he already knew

about the incident. After the court was apprised of the juror's comments, it noted, "I don't find anything in that that will cause me to make any changes in the judgment as I've just described it." Thereafter, the court gave additional advisements to Ramirez and concluded the judgment proceedings. Ramirez's counsel did not move for a new trial based on the juror's conduct. Under these facts, Ramirez has shown neither deceptive and reprehensible conduct by the prosecutor nor that he was prejudiced by the prosecutor's actions.

### D. Ineffective assistance of counsel

Ramirez argues that his counsel was ineffective in failing to move for a new trial on the basis of the purported juror misconduct. His contention has no merit.

A claim that counsel was ineffective requires a showing, by a preponderance of the evidence, of an objectively unreasonable performance by counsel and a reasonable probability that, but for counsel's errors, the defendant would have obtained a more favorable result. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) On this limited record and absent any showing that Juror No. 8 was not impartial, Ramirez cannot show that counsel was ineffective in failing to move for a new trial on the basis of juror misconduct or that the result would have been any different had counsel made such a motion.

## *DISPOSITION*

The judgment is affirmed.

_____

Smith, J.

WE CONCUR:


_____

Detjen, Acting P.J.


_____

Franson, J.

10.