[Crim. No. 12125. First Dist., Div. One. Nov. 12, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MORRIS LEE LAMBERT, Defendant and Appellant.

**COUNSEL**

Benjamin R. Winslow, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein, Herbert F. Wilkinson and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

THE COURT.*—This is an appeal from a judgment entered after appellant was convicted by a jury of being an ex-felon in possession of a firearm in violation of section 12021 of the Penal Code and of simple assault in violation of section 240 of the Penal Code, as a lesser included offense of assault with a deadly weapon.

Appellant contends that the prosecutor committed numerous instances of misconduct and that he was prejudiced thereby. We are of the opinion that misconduct did occur in various instances, but for reasons expressed below, we feel there was no prejudice to appellant.

" '[M]isconduct' implies a dishonest act or an attempt to persuade the court or jury by use of deceptive or reprehensible methods". (*People* v. *Asta* (1967) 251 Cal.App.2d 64, 86 [59 Cal.Rptr. 206]; see also *People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913], cert. den. 406 U.S. 971.) ■ Absent an objection to the alleged misconduct, however, and a request for an admonition, no claim of misconduct can generally be considered on appeal. (*People* v. *Perry* (1972) 7 Cal.3d 756, 790 [103 Cal.Rptr. 161, 499 P.2d 129]; *People* v. *Berryman* (1936) 6 Cal.2d 331, 337 [57 P.2d 136].) The claims may be considered absent an objection and request for admonition if: (1) " 'the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict,' " or (2) " 'where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court.' " (See *People* v. *Perry, supra,* 7 Cal.3d 756, 790, quoting from *People* v. *Berryman, supra,* 6 Cal.2d 331, 337.)

Many of appellant's contentions must be rejected on the basis of the above principles. Because there was no objection made when the prosecutor pointed out that appellant was sleeping, or when he referred in his closing argument to appellant's sleeping, no claim of misconduct can be predicated on these comments.

■ There was also no objection to the attempted impeachment of appellant by a prior felony conviction. Absent any stipulation, such impeachment would obviously have been proper once appellant took the stand on his own behalf. (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 453-454 [99 Cal.Rptr. 313, 492 P.2d 1]; Evid. Code, § 788.) Here there

*Before Molinari, P. J., Sims. J., and Elkington, J.

was a stipulation to the effect that the nature of the prior be kept from the jury during the reading of the information. It is not clear, however, whether the stipulation was intended to extend any further than the reading of the information. Defense counsel implied he wanted a broader extension, but the stipulation as ultimately formulated seemingly applied only to the reading of the information. This characterization probably explains why no objection was made when the nature of the prior was brought out on cross-examination. In light of the nature of the stipulation and the lack of an objection to the attempted impeachment, there is no cognizable misconduct which can now be challenged.

Since the impeachment was proper, there was no misconduct in referring to the nature of the prior in the prosecutor's closing argument.

Other contentions must be rejected because the conduct involved was clearly neither improper, nor prejudicial, if improper. ██ Since the prosecutor possessed several psychiatric reports which showed that appellant used heroin, it was not improper for him to inquire into a juror's potential bias due to appellant's drug usage. The prosecutor attempted on cross-examination to elicit appellant's heroin usage; thus, it is not true, as appellant claims, that there was no basis for the prosecutor's actions during the *voir dire*.

Although the prosecutor made a remark to defense counsel that was best left unsaid, it was made in chambers and therefore could not have prejudiced appellant in any way.

The remainder of appellant's contentions are not so lightly dismissed. Many have merit, and in addition, our review of his contentions uncovered other examples of prosecutorial misconduct. In general, the record shows a prosecutor who was often obstreperous with the trial court and whose conduct surpassed even the bounds of the non-Chesterfieldian politeness allowed prosecutors in an adversary system. (See *People* v. *Hayes* (1971) 19 Cal.App.3d 459, 470 [96 Cal.Rptr. 879].)

There were numerous instances in which objections to the prosecutor's conduct were sustained by the trial court. Although these instances do not by themselves show misconduct, they are part of the context in which other improper comments were made. For example, during the cross-examination of Jerry Tyson, the prosecutor unfairly raised the issue of Tyson's drug usage, saying he would make an offer of proof on the

subject when Tyson claimed his Fifth Amendment privilege, and then proceeded to drop the matter after Tyson denied such usage. Defense counsel apparently started to object to the prosecutor's actions, but was cut off by the prosecutor, who continued with a different question.

Although no formal objection was made to the above conduct, we deem the claim of misconduct arising therefrom to be cognizable under the exceptions to the general rule.

■ More serious misconduct occurred in the prosecutor's closing argument when the prosecutor noted that Tyson had been brought in through a holding cell door and then argued that he was therefore less believable than the prosecution witnesses who had come in through a different door, presumably a public entrance. Upon an objection to this comment, the prosecutor argued that his statement was merely a logical inference from the "evidence" since Tyson was wearing prison garb and this was visible to the jury.

The statement was not one addressed to the evidence as the prison garb was not offered to prove the existence or nonexistence of a fact. (See Evid. Code, § 140.) Absent impeachment by a prior felony, the prosecutor acted improperly in making the comment he did and arguing the credibility of witnesses on the basis thereof. (See *Hawk* v. *Superior Court* (1974) 42 Cal.App.3d 108, 129 [116 Cal.Rptr. 713].)

We are persuaded that comments made by the prosecutor to the effect the defense was fabricated were based on the evidence in that appellant changed his testimony in numerous ways from Friday of one week to Monday of the following week. (Cf. *People* v. *Bain* (1971) 5 Cal.3d 839, 847 [97 Cal.Rptr. 684, 489 P.2d 564].) ■ During these same comments, however, the prosecutor said the reason appellant lied was so that he could be found not guilty, walk back on the streets, and shoot someone else. While such comments are not improper when the evidence shows a systematic pattern of activity similar to that with which the defendant is charged, they are improper when, as here, no such pattern exists. (Cf. *People* v. *Hardy* (1969) 271 Cal.App.2d 322, 329-330 [76 Cal.Rptr. 557].)

Additionally, in response to an objection by defense counsel that the prosecutor's comments regarding fabrication were improper and prejudicial, the prosecutor responded that it was his role in the trial to be "prejudicial." While this comment is true, to the extent the prosecutor's

role as an adversary works to the defendant's prejudice, it is not true to the extent the prosecutor is to serve as an officer of the court and a representative of the People. The record as a whole shows that too often the prosecutor forgot his latter roles and attempted solely to prejudice the jury against appellant.

A further example of impropriety occurred in closing argument when the prosecutor stated that if it weren't for appellant's poor shooting ability, the luck of the victim, and the speed with which the victim was operated on, "we would be talking about murder, murder in the first degree." This statement both by itself and in its context was both a misstatement of the medical evidence and a transparent attempt to get the jury to "compromise" between an uncharged offense of first degree murder and a not guilty verdict, and come in with a verdict of the charged offense of assault with a deadly weapon. Dr. Mills had said only that the wound of the victim was of the type that *could* cause death if not treated immediately.

Despite the above recitals of misconduct and improprieties, we are persuaded that there was no prejudice to appellant given the verdict and circumstances of this case. (See *People* v. *Beivelman, supra,* 70 Cal.2d 60, 75; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den. 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70].) Appellant's defense was one of unconsciousness due to the ingestion of drugs. The jury obviously believed that appellant used drugs generally and had ingested them on the day of the offense as they recommended treatment for his drug problem. They simply did not believe appellant's testimony that he was unconscious at the time of the shooting. This belief was justified in light of appellant's change of testimony in many instances. The jury obviously did believe the testimony of the prosecution doctors that appellant could not have been unconscious, as that term is used to define a defense, even if he had ingested the drugs he claimed he did. In light of these considerations, and the jury's verdict of simple assault, as a lesser included offense to that charged, it is clear the misconduct was harmless.

Despite our conclusion that the misconduct here was nonprejudicial, we feel compelled to forewarn prosecutors that we have too often of late been faced with the task of determining whether unnecessarily zealous prosecutors have committed misconduct, and if so, determining whether, on the basis of the whole record, that misconduct was prejudicial. Frequently, it seems that deputy district attorneys see their sole function as winning cases even at the expense of a fair trial for the defendant and

the proper administration of justice in the courts. These excesses then force the Attorney General's office into often extreme positions in an effort to justify the prosecutor's actions. The Attorney General might consider whether it is more profitable to spend some time schooling such individuals in proper prosecutorial conduct. Certainly the courts' time could be better spent than having to review the entire record in numerous cases to determine whether a reversal is mandated by prosecutorial misconduct or not.

While this court is not inclined to find prosecutorial misconduct where we feel none exists, we do feel that the instances of such improprieties have come before us too often. Similarly, while we are not inclined to find such conduct prejudicial if the record does not warrant such a conclusion, we feel compelled to warn prosecutors that they cannot continue with impunity to engage in such conduct thinking that appellate courts will save them by applying the harmless error rule. Convictions have been reversed before, and will continue to be, whenever prejudicial misconduct occurs. The Attorney General, district attorneys, and deputy district attorneys should take appropriate steps to minimize such occurrences.

Judgment affirmed.

A petition for a rehearing was denied December 10, 1975.