Filed 5/6/15  P. v. Gallon CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KENNETH MCKAY GALLON,<br><br>Defendant and Appellant. | F067189<br><br>(Super. Ct. No. CRM024999)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Maureen M. Bodo, under appointment by the Court of Appeal, Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Franson, J. and Smith, J.

Defendant Kenneth McKay Gallon was convicted by jury trial of second degree burglary (Pen. Code, § 459; count 1) and dissuading a witness by force or threat (Pen. Code, § 136.1, subd. (c)(1); count 2). The trial court granted him three years' probation. On appeal, he contends the prosecutor committed misconduct during closing argument by (1) implying that defendant might have committed crimes in the past, and (2) arguing that defendant's poverty was a motive to commit the crime. We affirm.

## FACTS

On the evening of October 20, 2012, a man grabbed a battery charger from inside an AutoZone store in Atwater and ran out of the store. John, a customer at the store, witnessed the crime and ran after the thief. The thief ran toward a white van that was parked illegally, perpendicular to the parking spaces. The driver's and passenger's doors of the van were open and defendant was standing nearby. Defendant got into the van's driver's seat. The thief dropped the merchandise, approached the van's passenger's seat, and told defendant to "go, go, go, go." John, however, reached the thief before he could pull his legs into the van and close the door. John got on top of him and put his hand around his neck. Defendant was trying to get the van in gear. John, still holding the struggling thief, reached over and grabbed the keys from the ignition and threw them onto the roof of the adjacent taco shop. Defendant told John he had a gun. Defendant reached behind the driver's seat and told John he was going to shoot him. John then pulled the thief out of the van and onto the ground, holding him down with his foot. Defendant got out and walked around the front of the van. John was afraid he had a gun. John noticed that defendant was a large person and knew he could not restrain both men. John told defendant to stand back, but he kept coming, so John backed up and released the thief. People in the taco shop said they were calling the police. The thief got up and ran away. As the sound of sirens approached, defendant's demeanor changed completely; he told John he did not even know these people and he did not know what

2

was going on.  An officer arrived, spoke to John, and arrested defendant.  No gun was found in the van and the thief was not located.

### *Defense Evidence*

A private investigator testified that John said he told defendant he was going to call the police and defendant told John he was going to call the police too.

Defendant testified on his own behalf.  He said he was 59 years old and had never been convicted of a crime.  He explained that he went to the taco shop in his van.  He was alone and had no plans of meeting anyone.  He had bought a Slurpee ice drink at the AM/PM market.  He parked perpendicular to the spaces because his van's reverse gear was "kind of shady," "kind of messed up."  Sometimes it worked and sometimes it did not.  If he had parked properly, he "might have to push [the van] back."  He was drinking his Slurpee and, before he knew it, two strangers were fighting in his van.  John had chased the other man who then jumped into the van.  John was on the man, hitting him.  Defendant thought John was an officer, which is why defendant did everything John told him to do.  Defendant told John to get out of his van because he did not want to be a part of what was going on.  The battery charger was now in defendant's van; John told defendant to take the battery charger out of the van and he would let the man go.  Defendant got out of the van because he wanted the men out of his van.  He took the battery charger out of the van and put it on the ground.  Defendant let John take his keys out of the ignition.  Defendant was just waiting for officers to arrive.

Defendant did not know the thief and did not have an agreement to meet him.  Defendant testified, "I'm 59 years old.  I don't steal battery chargers."  He said he did not invite either of the men to get into his van.

Then the following colloquy occurred:

> "[DEFENSE COUNSEL]:  So you're telling us you were not part of the plot to burglarize or rob the AutoZone on that particular evening?

> "[DEFENDANT:]  No.

3

"[DEFENSE COUNSEL:] All right. You didn't have any need for a battery charger. Was the—does the battery in your car work?

"[DEFENDANT:] Yes sir.

"[DEFENSE COUNSEL:] Okay. Now you still own that van?

"[DEFENDANT:] Yes, sir.

"[DEFENSE COUNSEL:] Still having problems with the transmission?

"[DEFENDANT:] Every now and then. Yeah.

"[DEFENSE COUNSEL:] Okay. Do you have the money to get the transmission fixed?

"[DEFENDANT:] No. I'm a truck driver. I've been off.

"[DEFENSE COUNSEL:] Okay. And do you do a little bit of auto work yourself on your van to keep it running?

"[DEFENDANT:] (Moves head up and down.) Yes, sir.

"[DEFENSE COUNSEL:] Okay. Have you been working on the transmission at all?

"[DEFENDANT:] No. It just leaks a lot of fluid.

"[DEFENSE COUNSEL:] Leaks fluid?

"[DEFENDANT:] Fluid, yeah. I was going to get it fixed when I get back to work.

"[DEFENSE COUNSEL:] Very well."

Defendant denied threatening John or telling him he had a gun. He was surprised when John grabbed his keys from the ignition and threw them, because defendant was not going anywhere. He was waiting for the officers. John damaged the van when he pulled the keys out. Defendant testified that he was afraid for his own safety during the incident. He was just sitting there and he did not know what to do. He told the officer he was having problems with his reverse gear.

On cross-examination, defendant confirmed that he had come from the AM/PM market where he got a Slurpee. He then stopped by Mandy's house, even though he did not know her last name or address. She used to live by him. He also confirmed that he told the officer that he parked where he did because he had a bathroom emergency and also was going to buy some food at the taco shop. He testified that he was "sort of borderline diabetic. It appear[s] every now and then." He did not know if he ever asked the officer to use the bathroom. He agreed that the AM/PM market he had come from had a bathroom and his house was less than one-half mile from the taco shop. He agreed that his van was parked perpendicular to the parking spaces. His doors were closed and he was sitting in the van drinking his Slurpee when, about five minutes later, strangers entered his van.

*Argument*

In his opening argument, the prosecutor discussed the evidence and argued that all of the elements of the two charged offenses were satisfied.

Next, defense counsel's argument included the following:

> "I will present for your consideration my argument as to Count 1 in a nutshell. And Count 1 is the burglary and there is simply, there is just not enough proof that [defendant] is involved in this burglary. There is absolutely no motive for him to commit this crime. Nothing has been presented to you as to why he would need a battery charger or why he would become involved with some other individual who's never even identified. [¶] And I think one of the biggest aspects of this case, one of the reasons that I called [defendant] to the witness stand, is to be extremely uncharacteristic for [defendant]. [¶] This gentleman is 59 years old and so he's got 41 years of adult life. [Forty-one] years to do something wrong. [Forty-one] years to commit a crime."

Defense counsel continued by detailing for the "young jury" all of the presidents who had been in office since 1971 and all of the places the Olympics had been held since 1972. He noted that 41 years is a long time and he could not even remember all of the Olympic venues. He continued:

5

"This idea of time in a person's life where that person has not committed an offense, is not convicted of an offense is very significant for people that have achieved 59 years and have no record. [¶] Because what would be [defendant's] motivation on October 20th to suddenly for the first time in his life to make a decision to commit a crime, to actually commit, not the type of crime that happens spontaneously like a battery when you're suddenly in a fight with somebody, but the type of crime that requires premedication [*sic*], preplanning, cooperation with another criminal. The desire to help another person achieve a criminal goal. It just does not make sense."

In his closing argument, the prosecutor explained that the defense interpretation of the evidence was an effort to encourage the jurors to feel sorry for defendant. Then the following occurred:

"[PROSECUTOR:] And that, you know, the portrayal of him [as] being, you know, 59 years old and law abiding and, you know, no motive. [¶] And just stopping for a second, the Judge did not tell you that I have to prove motive. I don't have to prove motive. But as long as that issue has been brought up, you don't know that [defendant] has been a law abiding citizen for 41 years. We don't know that. It's not—

"[DEFENSE COUNSEL]: Your Honor, I'm going to object to this. The prosecution has the opportunity to present evidence that he has–

"THE COURT: Overruled.

"[DEFENSE COUNSEL]: —any prior conviction.

"THE COURT: Overruled. Overruled.

"[DEFENSE COUNSEL]: Well, Your Honor—

"THE COURT: Overruled.

"[DEFENSE COUNSEL]: —you're allowing them to speculate—

"THE COURT: Overruled.

"[DEFENSE COUNSEL]: —that he has a criminal record when they're the custodian of that record.

"THE COURT: No. Overruled.

"[PROSECUTOR]: What you know is that [defendant] told you that he's not been convicted of any crime. And that's different from never

6

having committed a crime. That's different from never having been arrested for a crime. And I'm not telling you anything different than that. It's just not evidence. And so the idea that we have this fine law abiding citizen, okay, but you don't know.

"And the other thing is motive. You know, even though I don't have to prove it I have to say, and I didn't make an issue of this on opening, because these are very difficult and trying economic times. And when a person is out of work and when a person has no money to repair a vehicle, I think it's—

"[DEFENSE COUNSEL]: Excuse me, Your Honor, it's improper to argue that the poverty of an accused person—

"THE COURT: What was your objection?

"[DEFENSE COUNSEL]: Improper argument. It's improper to argue that the poverty—

"THE COURT: No, just state the objection, please.

"[DEFENSE COUNSEL]: Improper argument. Improper reference to the poverty of an individual in relation to a motivation, a bald motivation to commit thievery. It's not allowed.

"THE COURT: Well—

"[PROSECUTOR]: I'll leave it, Your Honor.

"THE COURT: Yeah, leave—

"[PROSECUTOR]: I think I made my point.

"THE COURT: You made your point.

"[DEFENSE COUNSEL]: I think the jury should be considered [*sic*] not to consider that.

"THE COURT: Well, I'm going to let the record stand where it is.

"[PROSECUTOR]: So let me move on."

7

## DISCUSSION

## I.    Prosecutorial Misconduct

"'"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.'" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305.)  When the claim of prosecutorial misconduct is based on comments made before the jury, "we must view the statements in the context of the argument as a whole" (*People v. Dennis* (1998) 17 Cal.4th 468, 522), and "'the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.'" (*People v. Dykes* (2009) 46 Cal.4th 731, 771-772.)

Under state law, "we may not reverse the judgment if it is not reasonably probable that a result more favorable to the defendant would have been reached in [the] absence [of the prosecutorial misconduct].  (*People v. Watson* (1956) 46 Cal.2d 818, 836 ….)" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133.)  If, however, the prosecutorial misconduct renders the defendant's trial fundamentally unfair under the federal Constitution, we must reverse the judgment unless the misconduct is harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18; *People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323.)  "[I]mproper comment that 'falls short of rendering the trial fundamentally unfair' is error under state law.  [Citation.]  '[I]n cases where jurors are improperly exposed to certain factual matters, the error is usually tested under the standard set out in *People v. Watson*[, *supra,*] 46 Cal.2d 818, 836.'" (*People v. Bordelon, supra,* at pp. 1323-1324.)

8

## II.       Past Crimes

Defendant contends the prosecutor committed misconduct during closing argument by suggesting defendant might have a criminal past, and arguing that not having been *convicted* of a crime is different than not having *committed* a crime. Defendant says the argument was speculative, misleading, and alluded to facts not in evidence.  He explains that the prosecutor's comment invited the jury to speculate that he might have been a criminal with an undisclosed history who had eluded detection and arrest.  Defendant adds that the prosecutor knew what he was arguing was untrue because the probation officer's report established that, in fact, defendant had no criminal history whatsoever.[1]

A prosecutor is free to give an opinion on the state of the evidence.  He has wide latitude to comment on the quality of the evidence and the credibility of witnesses as long as it is a fair comment on the evidence and reasonable inferences or deductions therefrom.  (*People v. Bonilla* (2007) 41 Cal.4th 313, 336-337; see *People v. Martinez* (2010) 47 Cal.4th 911, 957 [prosecutors are allowed a wide range of descriptive comment and their argument may be vigorous as long as it amounts to fair comment on the evidence].)  The prosecutor "has broad discretion to state its views regarding which reasonable inferences may or may not be drawn from the evidence." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1026.)  "Arguments by the prosecutor that otherwise might be deemed improper do not constitute misconduct if they fall within the proper limits of rebuttal to the arguments of defense counsel." (*Ibid.*)

But a prosecutor commits misconduct if he argues facts not in evidence during closing argument "because such statements 'tend[] to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination.  It has been recognized that such testimony, "although worthless as a matter of law, can be

---

[1]      The probation report, prepared after trial, stated:  "The defendant has no prior adult or juvenile history."

'dynamite' to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence."'" (*People v. Hill* (1998) 17 Cal.4th 800, 828; *People v. Cunningham, supra,* 25 Cal.4th at p. 1026.) [2]

For example, in *People v. Bolton* (1979) 23 Cal.3d 208 (*Bolton*), defense counsel had been allowed to impeach the victim with the victim's prior felonies. In his closing argument, the prosecutor hinted that, if it were not for "'certain rules of court,'" he could show that the defendant was "'just as bad a guy as [the victim].'" (*Id.*, at p. 212, fn. 1.) The Supreme Court stated: "There is no doubt that the prosecutor's statement constituted improper argument, for he was attempting to smuggle in by inference claims that could not be argued openly and legally. In essence, the prosecutor invited the jury to speculate about–and possibly base a verdict upon–'evidence' never presented at trial. Appellant, in fact, had no prior criminal record."[3] (*Id.* at p. 212.)

Here, defendant testified that he had never been convicted of a crime and that he was not involved with this particular crime. Then during argument, defense counsel argued that committing this crime would have been "extremely uncharacteristic" of defendant. Counsel explained that defendant had 41 years to *do something wrong or commit a crime*. He stressed that 41 years is a very long time, marked by the passage of many presidential terms and Olympic venues, and it is significant that a person achieves the age of 59 without committing an offense or being convicted of an offense.

Although defense counsel's argument was not an entirely accurate comment on the evidence (which did not establish that defendant had not done *anything wrong* in 41 years), we believe the prosecutor's response to the comment came dangerously close to inviting the jury to speculate that defendant had engaged in bad behavior not reported

---

**2**       Although a prosecutor may not argue matters outside the record, he may argue inferences from the evidence, or matters that are drawn from common experience, history, or literature. (*People v. Williams* (1997) 16 Cal.4th 153, 221.)

**3**       The court found the misconduct harmless under any standard. (*Bolton, supra,* 23 Cal.3d at p. 214.)

in his record, and to suggesting the prosecutor had information about that bad behavior. The trial court provided no admonition to cure any possible prejudice resulting from the comment.

But even assuming the prosecutor's comment constituted misconduct, we conclude it was nevertheless harmless under any standard. The evidence against defendant was overwhelming. John testified in detail to the entire incident, explaining that he saw defendant waiting outside the van, saw him get into the driver's seat as the thief ran toward the van, heard the thief tell defendant to go, and heard defendant threaten to shoot him if he did not let the thief go. Defendant's testimony, on the other hand, was undermined by some of his own explanations, such as his testimony that he stopped for a bathroom emergency because he was sort of borderline diabetic, but he had bypassed other available facilities and then sat in his van drinking a Slurpee. Under these circumstances, we are confident beyond a reasonable doubt that, had the prosecutor not made the comment, the jury would have reached the same verdicts. (See *Bolton, supra,* 23 Cal.3d at p. 214 ["Whatever test of prejudice this court applies to the present case, it is certain that any reasonable jury would have reached the same verdict even in the absence of the prosecutor's remarks."].)

## III. Poverty as Motive

Defendant also contends the prosecutor committed misconduct by arguing that defendant's poverty was a motive to commit the burglary. Again, we conclude defendant was not prejudiced by any misconduct.

As detailed above, defendant testified he parked perpendicular to the parking spaces because his transmission was giving him trouble. He also testified that at the time of trial he was still having trouble with the van's transmission because he could not afford to fix it since he had been out of work. He also testified that he was not involved in the crime, explaining, "I'm 59 years old. I don't steal battery chargers,"

In his opening argument, the prosecutor did not mention motive.

11

But then defense counsel argued there was absolutely no motive for defendant to commit this crime and nothing had been presented to the jury to explain why defendant would need a battery charger or get involved with a thief. Counsel asked the jurors what would motivate defendant, after 41 years of crime-free living, to suddenly and for the first time in his life decide to commit this crime.

In response, the prosecutor argued that he did not have to prove motive, but as long as it had been brought up, he had to say that the economic times were difficult and when a person is out of work and has no money to repair a vehicle. Defense counsel interrupted, objecting that it was improper to argue poverty as a motive to commit theft.

"Ordinarily, '[e]vidence of a defendant's poverty or indebtedness, without more, is inadmissible to establish motive for robbery or theft because it is unfair to make poverty alone a ground of suspicion and the probative value of the evidence is deemed to be outweighed by the risk of prejudice.'" (*People v. Clark* (2011) 52 Cal.4th 856, 929.) There are, however, "circumstances under which evidence of a defendant's unemployment or financial status is relevant and admissible to a charge of robbery," such as "the limited purpose of rebutting an assertion that he did not commit the charged robberies because he did not need money," and "to eliminate legitimate explanations for his sudden possession of an unusually larger amount of money after the robbery." (*Ibid.*, fn. omitted.)

Again, we need not decide whether the prosecutor's argument was misconduct because we conclude any error was harmless. The prosecutor did not present *evidence* on defendant's poverty, but only commented on it during argument; he did not make the comment until his final argument; the comment was brief; and defense counsel objected at length. And, as explained above, the case against defendant was compelling.

## DISPOSITION

The judgment is affirmed.

12