Filed 6/17/24  P. v. Silva CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C097999 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF21-2087) |
| v. | |
| DANNY EUGENE SILVA, | |
| Defendant and Appellant. | |

Inebriated and sitting on the street one Christmas night, the victim accepted defendant Danny Eugene Silva's invitation to come home with him.  After the victim consumed more alcohol provided by defendant, he passed out on a bed.  When the victim awoke, he was naked, defendant was orally copulating him, a third man was naked on the bed behind him, and the victim felt pain in his rectum.  The jury convicted defendant of (1) oral copulation of an unconscious person and an intoxicated person, and (2) sexual penetration of an unconscious person and an intoxicated person.  The trial court sentenced defendant to 10 years in state prison, with a stayed sentence imposed on the sexual penetration counts.

1

On appeal, defendant argues that the prosecutor engaged in misconduct by making four statements during her rebuttal argument that were not supported by the evidence. To the extent counsel may have forfeited this issue, defendant argues he received ineffective assistance of counsel. The People dispute these assertions, and further argue that the trial court's one-third the middle term sentence on the stayed sexual penetration conviction is unauthorized because it must be the full middle term. We will affirm the convictions on all four counts but remand the matter for resentencing on the two counts of sexual penetration (counts 3 and 4).

I

BACKGROUND

The amended information alleged that defendant committed oral copulation of an unconscious person (count 1), oral copulation of an intoxicated person (count 2), sexual penetration by an unknown object of an intoxicated person (count 3), and sexual penetration by an unknown object of an unconscious person (count 4). (Pen. Code, §§ 287, subds. (f) & (i), 289, subds. (e) & (d).)[1] The amended information also alleged several aggravating circumstances under California Rules of Court, rule 4.421 not relevant to this discussion.

The victim and his wife had been married for one year but had been together for 12 years. The victim's wife testified that their relationship was good but a bit rocky. The victim, meanwhile, testified that he was not getting along with his wife, and they had agreed to separate. He was severely depressed and abusing alcohol.

On Christmas day, the victim and his wife celebrated the holiday with their children at home. The victim consumed alcohol all day, beginning when he woke up that morning. Around 7:30 p.m., the victim went to his boss's house for a dinner party and drinks. His wife testified that his boss picked him up in a car.

---

[1]     Undesignated statutory references are to the Penal Code.

2

The victim testified that he wanted to keep the peace at home, so he walked to his boss's house a mile and a half away and did not go by car. The victim was intoxicated at his boss's house. He described his intoxication at a level of six going up to seven on a scale of 1 to 10. The victim spent a few hours at his boss's house.

The victim left his boss's house on foot and ended up across from a local convenience store, where he sat crying. It was raining and cold outside. Defendant drove up in a car. The victim had never met defendant before.

Defendant asked the victim if he was okay or needed any help. Defendant offered the victim a ride to get out of the cold weather and rain. The victim got in the car and defendant drove him to a house that seemed to the victim to be less than a mile away.

When they went inside the house, defendant, the victim, and a child talked. Two other men came over. One of the men introduced himself as David.

Defendant offered the victim a drink. The victim accepted and said the drink tasted like "a lot of liquor," and smelled like rubbing alcohol which is the smell he associates with vodka. After the victim drank the drink, his level of intoxication went up to a level of nine on a scale of 1 to 10.

Defendant asked the victim if he "would like to lay down." The victim ended up fully clothed in a bedroom sitting on a bed. Defendant and David were also with him.

The next thing the victim remembered was waking up, because he dreamed his deceased father was saying, "Wake up. Wake up son." The victim testified, "I woke up with [the defendant], which to me looked like performing oral sex on me. And I believe it was David who was the darker male. I was fully declothed [*sic*] and this gentleman was behind me declothed [*sic*] as well."

Defendant stopped what he was doing and had a surprised "deer in the headlights look." The man behind the victim had that same look. The victim testified he experienced pain in his rectum area.

3

The victim was terrified. He picked up what he could see of his clothes on the ground and ran out the door. He was naked and was not wearing any shoes. The victim jumped a fence and ran, eventually winding up at his home. The victim reported he had no other injuries from the assault other than to his rectum.

The victim's wife testified that after the victim left for his boss's house on Christmas evening, she next saw him at 3:00 a.m. or 4:00 a.m. on December 26. She awoke to the victim banging on the front door.

The victim was sitting on the ground, banging on the front door with his hand, curled up in a ball, and was missing many of the clothes he had left the house with the previous day. His wife testified the victim was wearing a sweater and some sweatpants, but no shoes.

The victim's wife also testified he was crying, saying he wanted to go home, and he did not want her to touch him. He appeared frightened. The victim would not respond when his wife asked him what was wrong, but instead cried and looked away. The victim testified that he did not know how to tell his wife that something like that had happened to him. The victim also testified he was reluctant to speak with law enforcement because he did not want to tell another man what had happened to him, and he was afraid of being judged.

The victim stated he did not recall putting his clothes back on. But he did recall having his clothes on when he awoke the next morning.

That next morning, the victim told his wife he was hurting inside and finally told her what happened. The wife testified he didn't want her to call the police because he did not want any other men around.

Despite his wishes, the victim's wife called law enforcement. When law enforcement responded, the deputy told the wife that they needed the clothes the victim was wearing. The wife testified that the victim did not want to remove his clothes and he struggled with her. The wife also testified she was eventually able to get his clothes, did

4

not wash them, and as instructed by law enforcement, put them in a bag. The victim testified he was the one who put the clothes in the bag and gave them to law enforcement.

A Yuba County Sheriff's deputy reported the victim was emotional, distraught, and uncomfortable. The victim testified it was difficult to tell the deputy what happened. When the victim did provide a statement to the deputy, the victim was unable to name the men who committed the crimes but was able to describe each of them, along with a brief description of the vehicle driven by the defendant. The victim later picked defendant out of a photo line-up.

The victim testified that he declined to participate in a sexual assault response team (SART) exam because he did not want anyone touching him. He stated he was confused and did not want confirmation of what happened to him.

A criminologist for the Department of Justice examined the victim's boxer shorts. The criminologist swabbed the inside back of the victim's boxer shorts. When examined, the DNA swabs from the back center area of the victim's boxer shorts disclosed a mixture of DNA that came from three people and one that came from four people. The DNA mixture included DNA from an unspecified female. In examining the mixture and assuming there were three contributors, defendant was six billion times more likely than not to have been a contributor to the DNA combination. If there were four contributors, defendant was 1.8 billion times more likely than not to be a contributor.

We will address the statements made by the prosecutor during her rebuttal argument, *post*.

The jury found defendant guilty on each of the four counts charged.

The trial court sentenced defendant to 10 years in prison. For the first two counts of oral copulation (counts 1 and 2), the court imposed the upper term of eight years in prison but stayed count 2 under section 654. For the two counts of sexual penetration (counts 3 and 4), the trial court sentenced defendant to a consecutive "low term" of two years on each count but stayed the sentence on count 4 pursuant to section 654. The trial

court clerk's minutes, however, state that the trial court imposed one-third of the middle term (two years) on counts 3 and 4.

Defendant filed a timely notice of appeal.

## II

## DISCUSSION

A. *Prosecutorial Misconduct*

Defendant argues the prosecutor made four statements during her rebuttal argument that were not supported by the evidence at trial. We disagree.

B. *Additional Facts*

During closing argument, defendant's counsel questioned the victim's credibility. Defense counsel argued it was significant that despite the fact the victim ran home barefoot in the rain, he had "[n]o bruises . . . no scratches, no marks on his feet, nothing to indicate he was injured in any way or had the trauma of running home naked in the rain on the streets."

Defense counsel argued that the victim refused a SART examination because he did not want to know whether he had been sexually assaulted or not.

Counsel argued defendant's DNA could have ended up on the inside of the victim's boxer shorts in one of several innocent ways: from the defendant's floor, when the victim sat in the defendant's car, on the defendant's couch, or the defendant's bed. Defense counsel further argued there should have been some DNA on the front panel of the victim's boxer shorts but inexplicably, there was none.

In her rebuttal argument, the prosecution made four statements that defendant asserts were misconduct. First, in response to the argument about the lack of injuries from the victim's "running home barefoot," the prosecutor said, "To me, that is such a small fact in such a big case like this." The prosecutor criticized the defense's focus on the small facts that happened before and after the assault. The prosecutor also asserted

the victim was not focused on these small facts but was "thinking about the big facts. What happened to him."

On the question of his refusal to undergo a SART exam, the prosecutor argued, "After being sexually assaulted in such a way, he testified he didn't want to know the truth. I think a lot of people who go through similar situations would have a similar thought. This is so difficult for him. You heard him testify he wants to believe none of this happened. He would love to believe that none of this happened. He doesn't want this to be part of his memory for the rest of his life. He didn't want to do a SART exam, be touched and prodded with, just to know . . . there is more confirmation."

Turning to the defense's comments about the DNA evidence, the prosecutor stated, "[I]t's reasonable to assume there [are] four contributors. One is . . . the victim; one is definitely [the defendant]; there was another man in the room with him; and who does [the victim] live with? Who could have done his laundry? His wife. It's very reasonable to think those were likely the three or four contributors. It is not inconsistent with the story; however, there was only one buccal swab that was tested with the shorts and that was the defendant's and that was that positive match."

On the issue of whether there was DNA on the front of defendant's boxer shorts, the prosecutor stated, "[Defense counsel] made an interesting point. There was no DNA on the front of the boxer shorts. I thought that was an interesting argument. Then I started to think [the victim] ran home naked. He said it was raining outside. How does saliva get washed off? Water. He ran home. It sounded like for quite some time, five or six minutes is what he estimated. It was raining. And then he sat outside in front of his house. May or may not have had clothes. Rain washing off."

C. *Analysis*

Prosecutorial misbehavior "violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] But conduct by a prosecutor that

7

does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " (*People v. Espinoza* (1992) 3 Cal.4th 806, 820.) "Counsel is not permitted to 'assume or state facts not in evidence [citation] or mischaracterize the evidence [citation]'; however, the reasonableness of inferences counsel draws from matters in evidence ' " 'is for the jury to decide.' " ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 787.) "A prosecutor may make fair comment on the state of the evidence." (*People v. Cook* (2006) 39 Cal.4th 566, 608.) In this vein, the prosecutor " 'enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom.' " (*People v. Collins* (2010) 49 Cal.4th 175, 230.) A prosecutor "may argue facts not in evidence that are common knowledge or drawn from common experiences." (*People v. Young* (2005) 34 Cal.4th 1149, 1197 [prosecutor's surmising during closing argument that a handgun contained six shots was based on the common knowledge that some guns hold just six bullets was not misconduct].)

As defendant acknowledges, his trial counsel failed to object to the arguments he now raises on appeal. That failure forfeits his challenges. (See *People v. Wrest* (1992) 3 Cal.4th 1088, 1105 ["by failing to interpose any objection at trial, defendant waived any error or misconduct emanating from the prosecutor's argument that could have been cured by a timely admonition"].) But we will address the challenge in light of defendant's claim of ineffective assistance of counsel.

To prevail on that claim, defendant must establish (1) that his trial counsel's performance "fell below an objective standard of reasonableness . . . [¶] . . . under prevailing professional norms," and (2) that he was prejudiced by the deficient performance. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692.)

Here, we conclude defense counsel's failure to object to these four statements did not fall below a standard of objective reasonableness because they were not objectionable.

We reject defendant's claim that the prosecutor's reference to the case as a " 'big case' " suggested "[t]he jury could have believed there were life terms at stake or some harsh punishment awaiting [defendant]." The prosecutor's comment must be considered in the context of her argument that defendant was focused on the small points before and after the assault, while the victim focused his testimony on the big fact that defendant orally copulated him. This argument did not impermissibly imply anything else. (See *People v. Benson* (1990) 52 Cal.3d 754, 795, italics omitted [holding a juror hearing the prosecutor describing the crime as "brutal, atrocious, and heinous" would have heard the remarks as a comment on the nature of the offenses themselves, not evidence of something outside of the record].)

As to the origin of female DNA on the victim's boxer shorts, the prosecutor made a reasonable argument based on common sense and the evidence adduced at trial that the victim's wife of one year (and partner for 12 years before that) was one logical source of that DNA as she resided with him and may have done his laundry.

The same is true of the prosecutor's comment that it was reasonable to believe the victim did not want a SART exam because he was traumatized and did not want to be traumatized again. Here, this victim testified he declined to participate in a SART exam because he did not want anyone touching him. We conclude the prosecutorial comment was a fair argument based on the testimony.

Finally, the evidence established that defendant ran home naked during a rainy night. It was a reasonable inference under those facts that the DNA potentially present on the front of the victim may have washed off in the rain before he put his boxer shorts on, thus there was no other DNA on the front of the victim's boxer shorts. The prosecutor's argument was fair under the facts adduced at trial.

9

Despite defendant's claims, this is not a case where the prosecutor's comments implied there was additional evidence about defendant that was known to the prosecutor (but not the jury) that turned the prosecutor into her own witness offering unsworn testimony not subject to cross-examination. (See *People v. Bolton* (1979) 23 Cal.3d 208, 213.) Rather, we conclude the prosecutor's comments were permissible because they " 'did not mischaracterize or assume facts not in evidence, but merely commented on the evidence and made permissible inferences.' " (*People v. Holmes, McClain and Newborn, supra*, 12 Cal.5th at p. 787.) Because there was no prosecutorial misconduct, counsel had no cause to object, and defendant's claim of ineffective assistance fails.

D. *Sentencing Error*

The People argue the sentence of two years on count 4 is an unauthorized sentence of one-third of the middle term. The People contend this sentence is unauthorized because the one-third of the middle-term rule does not apply to sentences stayed under section 654. (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.) Defendant did not respond to this argument. We agree with the People.

In pronouncing its sentence of 10 years, the trial court imposed eight years on each of the oral copulation counts (counts 1 and 2) and stated (for counts 3 and 4), "I'll impose the low term of 2 years to run consecutive. The aggravated term of imprisonment is 10 years. [¶] The other terms of imprisonment: Count 2 will be stayed pursuant to [section] 654, as well as count 4."

The sentencing triad for both counts 3 and 4 is three, six, or eight years. (§ 289, subds. (e) & (f).) Thus, a two-year sentence is not authorized as a "low term" but is to be one-third the middle term. Further, to the extent that count 4 was stayed pursuant to section 654, the trial court should have imposed and stayed a full term of three, six, or eight years on that count. (*People v. Cantrell, supra*, 175 Cal.App.4th at p. 1164.) We are empowered to correct an unauthorized sentence. (*People v. Smith* (2001) 24 Cal.4th 849, 853.) In this case, however, due to the uncertainty created by the trial court's use of

10

the phrase "low term," we will remand the matter to the trial court for it to impose the appropriate sentences on counts 3 and 4, the two counts of sexual penetration.

## III

## DISPOSITION

Each of the convictions is affirmed, as are the sentences for the two counts of oral copulation (counts 1 and 2).  The matter is remanded for resentencing only on the two counts of sexual penetration (counts 3 and 4).


_____\s\_____,
Krause, J.



We concur:



_____\s\_____,
Earl, P. J.



_____\s\_____,
Boulware Eurie, J.