Filed 3/14/23  P. v. O'Connell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE, | C093156 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F871) |
| v. | |
| MICHAEL PATRICK BRIAN O'CONNELL, | |
| Defendant and Appellant. | |

A jury found defendant Michael Patrick Brian O'Connell guilty of first degree murder (Pen. Code, § 187, subd. (a)—count 1)[1] after he shot his roommate in the chest with a shotgun.  The jury also found true a firearm enhancement allegation under section 12022.53, subdivision (d).

---

[1]     Undesignated statutory references are to the Penal Code.

On appeal, defendant contends: (1) there was insufficient evidence of premeditation and deliberation to support his conviction for first degree murder; (2) the trial court erred and violated his constitutional rights by denying his *Batson/Wheeler* motion;[2] (3) the trial court prejudicially erred and violated his constitutional rights by instructing the jury with CALCRIM Nos. 3471 and 3472 or, in the alternative, his counsel rendered ineffective assistance by failing to object to the instructions; and (4) he is entitled to remand for resentencing because the trial court misunderstood its discretion to strike the charged enhancement and impose a lesser, uncharged enhancement in its place or, in the alternative, his counsel rendered ineffective assistance by failing to request and present evidence to support a lesser enhancement.

We reject defendant's claims regarding the sufficiency of the evidence, jury selection, and instructional error on the merits, but agree remand is appropriate to permit the trial court to exercise its sentencing discretion. We shall therefore vacate the sentence and remand this case for the limited purpose of allowing the trial court to exercise its discretion as to whether to strike the section 12022.53, subdivision (d) enhancement and instead impose a lesser, uncharged enhancement. In all other respects, the judgment is affirmed.

FACTUAL BACKGROUND[3]

The victim (Adam Mancebo) and defendant were friends and roommates. The victim lived in a separate bedroom in defendant's house.

---

[2]    *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69] (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

[3]    Following the well-established rule of appellate review, we recite the facts in the light most favorable to the judgment, drawing all reasonable inferences in support of the conviction. (*People v. Bogle* (1995) 41 Cal.App.4th 770, 775.)

On the day of the shooting, February 6, 2019, defendant's mother, M.O., drove to defendant's house, arriving around 3:30 p.m. She let herself in, set her purse down on the living room couch, and went to defendant's room to speak with him. Defendant told her that he needed to rest, so M.O. went to the living room and watched television.

Around 5:00 p.m., M.O. went back to defendant's room and knocked on his door. Defendant answered and they talked for a while in the kitchen area. She then went to the living room and sat on the couch. Shortly thereafter, defendant came into the living room with a 12-gauge pump-action shotgun slung on his shoulder. M.O. stated in her police interview that when she saw the shotgun, she considered telling defendant to put it away.

Armed with the shotgun, defendant went to the victim's bedroom and tried to open the door, but found it locked. Defendant banged on the door and yelled to the victim that he had to "get out." The victim yelled something back. Defendant then went to the living room and waited, standing, facing the hallway with his back near the wall.

A few minutes later, the victim, unarmed and wearing only his boxer shorts, entered the living room, pausing briefly in the doorway. M.O. stated in her interview with law enforcement that the victim "had his fists balled up and he was coming toward [defendant], and then [defendant] shot him." At trial, M.O. described the victim as "charging" toward the defendant. However, in her interview, she unequivocally stated that the victim was walking, not running, at the time of the shooting.

M.O. did not see defendant aim the gun at the victim, but she heard the gun fire and saw the victim fall, first to his knees and then backwards. She testified that the victim was not within arm's reach of defendant when he was shot. She estimated that the victim was about four to six feet away from her, and that she was about three to four feet away from defendant.

M.O. testified that immediately after the shooting she ran out of the house and called 911. As she was leaving the house, she heard defendant unloading the shotgun.

3

After emptying the gun, defendant followed her outside. Both M.O. and defendant provided information to the 911 dispatcher while they were waiting for the police.

The police arrived about 5:18 p.m. Defendant was distraught and crying, but cooperative with police orders. The officers found the shotgun, live rounds, and one spent round on the couch. The victim was on the floor, bent over, with a gunshot wound to his chest.

After his arrest, defendant was processed by the police. Defendant had blood spatter on him, but no observable injuries. Investigators observed blood on defendant's left thumb, and defendant commented that his left hand was in the forward position on the shotgun.

The autopsy revealed that the victim died from the single shotgun wound to his chest. Stippling on the skin surrounding the wound indicated that the victim was shot at an "intermediate range." The autopsy revealed injuries to the victim's legs, consistent with him having fallen to his knees. The autopsy did not reveal any defensive wounds to the victim's hands.

Detective Greg Ketel reviewed home surveillance video footage recorded by cameras inside defendant's house. The footage showed defendant carrying the shotgun around the house at different times of the day and night during the period from November 2018 through January 2019. The videos showed defendant carrying the shotgun over his shoulder or in a "low-ready" position, sometimes when others were present.

The video cameras did not capture the shooting but captured some of defendant's movements on the day of the shooting. The footage showed a normal interaction between defendant and the victim in the early morning hours on the day of the shooting. Later, about 4:58 p.m., the footage showed M.O. walking towards defendant's room. About 5:02 p.m., defendant can be seen standing in the kitchen without a shotgun. About 5:04 p.m., defendant reenters the frame with a shotgun. About 5:08 p.m., M.O. can be

4

seen leaving the house, followed a few seconds later by defendant, who briefly pauses in the doorway as he leaves.  About 5:20 p.m., police entered the house.

There were no defense witnesses.

## PROCEDURAL BACKGROUND

The district attorney filed an information charging defendant with one count of first degree murder.  (§ 187, subd. (a).)  It further was alleged that defendant intentionally and personally discharged a firearm causing death within the meaning of section 12022.53, subdivision (d).  The jury found defendant guilty of first degree murder and also found true the firearm enhancement allegation.  The trial court sentenced defendant to a total aggregate term of 50 years to life, consisting of 25 years to life for the murder (count 1) and an additional 25 years to life for the firearm enhancement.  Defendant filed a timely notice of appeal from the judgment.

## DISCUSSION

### I

### *Sufficiency of Evidence of Premeditation and Deliberation*

Defendant contends there was insufficient evidence of premeditation and deliberation to support his conviction for first degree murder.  We disagree.

A.      *Legal background*

A verdict of premeditated first degree murder requires more than a showing of intent to kill.  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  The prosecution must prove that the defendant willfully, deliberately, and with premeditation, unlawfully killed a human being with malice aforethought.  (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1172.)  An unlawful killing with malice aforethought, but without deliberation and premeditation, is murder in the second degree.  (*People v. Anderson* (1968) 70 Cal.2d 15, 23; § 189, subd. (b); see also *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1264 [discussing need to distinguish premeditation and deliberation from malice aforethought].)

5

" ' "In this context, 'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.' " ' [Citation.] ' "An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." ' [Citations.] 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' [Citation.]" (*People v. Potts* (2019) 6 Cal.5th 1012, 1027.)

In *People v. Anderson, supra*, 70 Cal.2d 15, our Supreme Court identified three categories of evidence commonly present in cases of premeditated murder: (1) evidence of planning activity prior to the killing; (2) evidence of the defendant's prior relationship and/or conduct with the victim from which the jury reasonably could infer a motive to kill; and (3) evidence that the manner in which the defendant carried out the killing was so particular and exacting that the defendant must have had a preconceived design to take the victim's life. (*Id*. at pp. 26-27.) *Anderson* held that when evidence of all three categories is not present, courts typically have required either very strong evidence of planning, or some evidence of motive in conjunction with evidence of planning or a deliberate manner of killing. (*Id*. at p. 27; accord, *People v. Elliot* (2005) 37 Cal.4th 453, 470.)

However, our Supreme Court has since clarified that the *Anderson* guidelines are "descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420 (*Halvorsen*); accord, *People v. Young* (2005) 34 Cal.4th 1149, 1183.) In short, " '[t]he *Anderson* factors, while helpful for purposes of review, are not a sine qua non to finding first degree premeditated murder . . . .' " (*People v. Koontz, supra*, 27 Cal.4th at p. 1081.)

B.     *Standard of review*

"In reviewing the sufficiency of the evidence to support a criminal conviction, we review the record ' "in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.] We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. [Citation.]" (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.)

C.     *Analysis*

Using the *Anderson* factors as a guide, and reviewing the facts in the light most favorable to the judgment, we conclude there is sufficient evidence to support defendant's conviction for first degree, premeditated murder.

There is evidence of planning in that defendant armed himself with a loaded gun prior to confronting the victim, and shortly thereafter used the gun to kill the unarmed victim. Although it was not necessarily unusual for defendant to carry a gun around the house, the video surveillance evidence shows defendant was unarmed and that he specifically retrieved the gun just before the shooting. This evidence supports an inference that defendant considered the possibility of homicide in advance. (*People v. Miranda* (1987) 44 Cal.3d 57, 87, abrogated on other grounds by *People v. Marshall* (1990) 50 Cal.3d 907, 933, fn. 4; accord, *People v. Marks* (2003) 31 Cal.4th 197, 230 [bringing gun supports inference defendant planned a violent encounter]; *People v. Brito* (1991) 232 Cal.App.3d 316, 323 [pointing loaded gun toward victim's face and making demands supports inference of planning]; *People v. Salazar* (2016) 63 Cal.4th 214, 245 [bringing loaded gun to restaurant demonstrated preparation].)

The manner of killing also could support an inference that the shooting was deliberate and premeditated. After demanding the victim "get out," defendant, still

armed with the shotgun, returned to the living room and took a strategic position at the far side of the room, across from the hallway. A few minutes later, when the victim entered the living room, unarmed and wearing only his underwear, defendant shot him squarely in the chest. There was no indication of a struggle to justify defendant's use of deadly force, and the victim was not within arm's reach of defendant when he was shot.

Although M.O. testified that the victim "charged" at defendant with clenched fists, the jury was free to reject that testimony and instead credit her earlier statement during her interview with Detective Ketel that the victim was walking toward defendant. From this, the jury could infer that defendant had time to reflect before making a calculated decision to kill. And there was no evidence that defendant fired the weapon in a rash or panicked manner. Investigators observed blood on defendant's left thumb and defendant admitted that his left hand was gripping the forward portion of the shotgun when the shooting occurred. Thus, the jury reasonably could infer that defendant was prepared to shoot and that the manner of killing suggested a preconceived, deliberate plan, rather than a rash explosion of violence. (*People v. Miranda, supra*, 44 Cal.3d at p. 87 [lack of provocation]; *People v. Thompson* (2010) 49 Cal.4th 79, 114-115 [close-range shooting without any provocation or evidence of struggle]; *People v. Marks, supra*, 31 Cal.4th at p. 230 [same]; *Halvorsen, supra*, 42 Cal.4th at p. 422 [close distance shooting in vital area of body]; *People v. Caro* (1988) 46 Cal.3d 1035, 1050 [a close-range gunshot to the face], overruled on another ground as explained in *People v. Whitt* (1990) 51 Cal.3d 620, 657, fn. 29; see also *People v. Elliot, supra*, 37 Cal.4th at p. 471 [vulnerability of victim and evidence of a previously selected location suggest premeditation].)

Additionally, the jury could take account of defendant's behavior immediately after the killing—unloading the gun and laying it on the couch—and find this behavior inconsistent with a rash, impulsive killing. (*People v. Disa* (2016) 1 Cal.App.5th 654, 667.)

8

We agree with defendant that there is scant evidence of the third *Anderson* factor, motive to kill.  At most, we could infer that defendant was angry with the victim for some unspecified reason and therefore wanted him to "get out."  But this is hardly fatal.  It is well established that proof of motive is not required to sustain a conviction for first degree murder.  (*People v. Edwards* (1991) 54 Cal.3d 787, 814; *Halvorsen, supra*, 42 Cal.4th at p. 421.)

We acknowledge that the evidence of premeditation and deliberation in this case is not overwhelming, and that a reasonable jury could have returned a contrary finding.  Yet it is the role of the jury, not the appellate court, to weigh the evidence, resolve conflicting inferences, and determine whether the People established guilt beyond a reasonable doubt.  (*People v. Casares* (2016) 62 Cal.4th 808, 823-824, overruled in part on other grounds in *People v. Dalton* (2019) 7 Cal.5th 166, 214.)  "[T]he relevant question on appeal is not whether *we* are convinced beyond a reasonable doubt, but whether *any* rational trier of fact could have been persuaded beyond a reasonable doubt that defendant premeditated the murder."  (*People v. Perez* (1992) 2 Cal.4th 1117, 1127; accord, *People v. Brady* (2010) 50 Cal.4th 547, 561.)  " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citations.]"  (*People v. Burney* (2009) 47 Cal.4th 203, 253.)

Accepting all reasonable inferences that the jury might have drawn from the evidence, we conclude a rational trier of fact could have found defendant guilty of first degree murder beyond a reasonable doubt.  We therefore reject defendant's challenge to the sufficiency of the evidence.

II

Batson/Wheeler

Defendant argues the trial court erred in concluding he had not made a prima facie case of discrimination as to prospective juror G.C.  He contends that the erroneous denial

9

of his *Batson/Wheeler* motion requires reversal because it violated his federal constitutional right to equal protection and his state constitutional right to a jury drawn from a representative cross-section of the community.  We are not persuaded.

A. *Procedural background*

During voir dire, defense counsel made a "*Batson/Wheeler*" motion, claiming that the prosecution had exercised four of its peremptory challenges in a discriminatory fashion in violation of *Batson, supra*, 476 U.S. 79 and *Wheeler, supra*, 22 Cal.3d 258. Based on the jurors' surnames and visual appearances, defense counsel asserted that the four excluded jurors—F.G., E.L, J.M., and G.C.—were likely members of racial/ethnic minority groups.[4]  From this, defense counsel argued that the prosecution was using its peremptory challenges to purposefully discriminate and systematically exclude minorities from the jury.

The court denied the motion, concluding that defense counsel had failed to make a prima facie showing of discrimination.  In support of its conclusion, the court found that the jury appeared to be "remarkably diverse" both in gender and ethnicity.[5]

After finding that defense counsel failed to make a prima facie case, the court invited the prosecution to state for the record its nondiscriminatory reasons for excusing the jurors.  The prosecutor first agreed with the court that the defense had not made a

---

[4]    Specifically, defense counsel asserted that juror E.L. had black hair and black eyebrows and a last name generally associated with Asian Americans, and that the other three jurors had surnames and traits consistent with a Hispanic ethnicity.

[5]    The trial court also stated that even if a prima facie case had been made, there were compelling reasons for challenging the jurors based on their voir dire responses. Specifically, the court noted that F.G. was "extremely introverted"; E.L. had siblings who had been arrested for violent crime, found law enforcement intimidating, and made some negative comments about law enforcement; J.M. had been arrested for driving under the influence (DUI) and had a sister who had been arrested for robbery and fraud; and G.C. had a DUI conviction.

prima facie case by showing facts sufficient to support an inference of discriminatory purpose against a cognizable group. The prosecutor disputed the relevancy of the surnames because, according to her notes, neither E.L. nor J.M. appeared to be a members of a racial/ethnic minority group. Nevertheless, the prosecutor stated for the record her legitimate, nondiscriminatory reasons for excusing each juror.

The trial court denied the *Batson/Wheeler* motion based on defense counsel's failure to make a prima facie showing, without addressing the prosecutor's stated reasons for excusing the jurors. The court then continued with voir dire.

B.      *Legal background*

The use of peremptory challenges to exclude members of an identifiable group of citizens on racial or ethnic grounds is unconstitutional. (*People v. Battle* (2021) 11 Cal.5th 749, 772 (*Battle*); *Batson, supra*, 476 U.S. at p. 89; *Wheeler, supra*, 22 Cal.3d at pp. 276-277.) Such conduct violates a criminal defendant's right to equal protection of the laws, as well as the right to trial by a jury drawn from a representative cross-section of the community. (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1157 (*Gutierrez*).)

Courts employ a three-step process in evaluating a defendant's *Batson/Wheeler* motion. (*Gutierrez, supra*, 2 Cal.5th at p. 1158.) "First, the *Batson/Wheeler* movant must demonstrate a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." (*Gutierrez*, at p. 1158.) There is a rebuttable presumption that a peremptory challenge has been exercised on a constitutionally permissible ground, and the burden is on the opposing party to demonstrate impermissible discrimination. (*People v. Bonilla* (2007) 41 Cal.4th 313, 341 (*Bonilla*); *People v. Williams* (2000) 78 Cal.App.4th 1118, 1125.) To overcome the presumption, the moving party must produce evidence sufficient to support a reasonable inference of discriminatory intent. (*Gutierrez*, at p. 1158; *People v. Kelly* (2007) 42 Cal.4th 763, 779.)

11

Second, if the movant makes a prima facie showing, the burden shifts to the proponent of the strike to offer a permissible, nondiscriminatory explanation for the strike. (*Gutierrez, supra*, 2 Cal.5th at p. 1158.) " '[E]ven a "trivial" reason, if genuine and neutral, will suffice.' " (*People v. Lenix* (2008) 44 Cal.4th 602, 613 (*Lenix*).)

Third, if a neutral explanation is tendered, the court must decide whether the movant has proven purposeful discrimination. (*Gutierrez, supra*, 2 Cal.5th at p. 1158; *People v. O'Malley* (2016) 62 Cal.4th 944, 974.) At this third step, " 'the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' " (*Lenix, supra*, 44 Cal.4th at p. 613; see *Gutierrez*, at p. 1158 [this portion of the inquiry focuses on the subjective genuineness of the explanation, not its objective reasonableness].) To prevail, the movant must show that it was " ' "more likely than not that the challenge was improperly motivated." ' " (*Gutierrez*, at p. 1158.)

When the trial court has expressly found that the movant failed to make a prima facie showing, we do not attempt to determine whether we would have made the same ruling. Instead, we apply a deferential standard of review, considering whether the trial court's conclusion is supported by substantial evidence.[6] (*Battle, supra*, 11 Cal.5th at p. 772; accord, *People v. Silas* (2021) 68 Cal.App.5th 1057, 1095.)

---

[6] We acknowledge that the California Supreme Court previously has characterized the issue of whether evidence in the record supports an inference of discrimination as a legal question, subject to independent review. (See *People v. Cornwell* (2005) 37 Cal.4th 50, 73, overruled in part on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; and see *People v. Clark* (2016) 63 Cal.4th 522, 567.) However, we follow the more recent holding in *Battle, supra*, 11 Cal.5th at page 772. In any event, our conclusion would not change if we applied a de novo standard of review.

We examine the entire record before the trial court at the time of the motion to determine whether it supports an inference of group bias.  (*Battle, supra*, 11 Cal.5th at p. 773.)  Though proof of a prima facie case may be established by any information in the record, our Supreme Court has observed that "[c]ertain types of evidence are especially relevant to this inquiry, including [1] whether the prosecutor has struck most or all of the members of the venire from an identified group, [2] whether a party has used a disproportionate number of strikes against members of that group, [3] whether the party has engaged prospective jurors of that group in only desultory voir dire, [4] whether the defendant is a member of that group, and [5] whether the victim is a member of the group in which the majority of the remaining jurors belong."  (*Ibid*.; accord, *People v. Scott* (2015) 61 Cal.4th 363, 384.)  A court may also consider nondiscriminatory reasons for a peremptory challenge that are clearly established in the record and that necessarily dispel any inference of bias.  (*Battle*, at p. 773; *Scott, supra*, at p. 384.)  However, "a reviewing court may not rely on a prosecutor's statement of reasons to *support* a trial court's finding that the defendant failed to make out a prima facie case of discrimination. . . .  [T]he fact that the prosecutor volunteered one or more nondiscriminatory reasons for excusing the juror is of no relevance at the first stage."  (*Scott*, at p. 390; accord, *People v. Garcia* (2011) 52 Cal.4th 706, 746 (*Garcia*).)

C.    *Analysis*

As an initial matter, we note that defendant's appeal is focused on the peremptory challenge of a single prospective juror:  G.C.  Thus, while facts relating to other prospective jurors may be relevant evidence, our review is limited to the prosecution's exercise of the peremptory challenge against that juror.  Based on this record, we agree with the trial court that defendant failed to sustain his burden of showing a prima facie case of discrimination.

We begin by noting that defendant's motion argued that the prosecution violated *Batson/Wheeler* by using peremptory challenges to exclude "minority" jurors

13

(specifically, three Hispanic-surnamed jurors and one Asian-surnamed juror). However, the California Supreme Court has held that minorities, or " 'people of color,' " is not a cognizable group for purposes of *Batson/Wheeler* analysis. (*People v. Davis* (2009) 46 Cal.4th 539, 583; accord, *People v. Neuman* (2009) 176 Cal.App.4th 571, 575-578.) Accordingly, in assessing whether defendant has established a pattern of discrimination, we shall consider the motion only as it relates to the Hispanic-surnamed jurors. (*Davis, supra*, at p. 584 [Hispanic-surnamed jurors may constitute a cognizable class]; but see *People v. Cruz* (2008) 44 Cal.4th 636, 656 [Caucasian woman who apparently acquired Hispanic surname through marriage is not member of cognizable group].)

Second, this was not a situation in which the ethnicity of the defendant or the victim " 'raise[d] heightened concerns about whether the prosecutor's challenge was racially motivated.' " (*People v. Rhoades* (2019) 8 Cal.5th 393, 430.) There is no evidence that the defendant (Michael Patrick Brian O'Connell) was Hispanic, or that the victim (Adam Mancebo) was a member of the group to which a majority of the remaining jurors belonged. Thus, the record reveals no specific reason why the prosecution would be motivated to exclude people with Hispanic surnames from the jury. (*Ibid*.) "Although this circumstance does not affirmatively demonstrate the absence of discrimination, it 'identifies a factor that, because it is absent, fails in this case to support an inference of discrimination.' [Citation.]" (*People v. Dement* (2011) 53 Cal.4th 1, 20, overruled on other grounds as stated in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

Third, a prima facie showing was not established merely because the prosecution excused a few prospective jurors with Hispanic surnames. While no prospective juror may be struck on improper grounds, our Supreme Court has explained that " '[a]s a practical matter, . . . the challenge of one or two jurors can rarely suggest a *pattern* of impermissible exclusion.' " (*People v. Bell* (2007) 40 Cal.4th 582, 598 (*Bell*), overruled in part on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13; accord, *Garcia, supra*, 52 Cal.4th at p. 747; *Bonilla, supra*, 41 Cal.4th at p. 343.) A bare claim

14

consisting of "little more than an assertion that a number of prospective jurors from a cognizable group ha[ve] been excused" is "particularly weak," and falls "far short" of raising a reasonable inference of discrimination. (*People v. Panah* (2005) 35 Cal.4th 395, 442.) The weakness in this case is compounded because defendant has failed to show how many of the prospective jurors had Hispanic surnames or whether any jurors with Hispanic surnames ultimately were impaneled on the jury.[7] (*Garcia*, at p. 747; *People v. Neuman, supra*, 176 Cal.App.4th at p. 582; *Bell, supra*, at p. 599; see *People v. Clark* (2011) 52 Cal.4th 856, 906 [fact that impaneled jury included a member of the identified group is indication of nondiscriminatory intent].)

Fourth, defendant has not shown that the prosecution's questioning of jurors with Hispanic surnames was cursory or materially different from the questioning of other jurors. (*Bonilla, supra*, 41 Cal.4th at p. 343.)

Finally, although not critical to our decision, the record of voir dire reveals nondiscriminatory reasons for excusing the jurors in question, including that F.G. was extremely introverted; J.M. had a DUI and had a sister who had been arrested multiple times; and G.C. had a DUI.[8] (See *People v. Panah, supra*, 35 Cal.4th at p. 442 [negative experience with police or the arrest of a prospective juror or a close relative is a neutral

---

[7] We also note that the prosecutor did not believe prospective juror J.M. was Hispanic. (*Bonilla, supra*, 41 Cal.4th at p. 344 [where a prosecutor is unaware of a prospective juror's group status, it logically follows that the prosecutor did not discriminate on that basis].)

[8] Defendant argues that G.C.'s DUI is not a valid reason to excuse him from the jury because Juror 1249142, who served on the jury, also had a DUI. We do not find a comparative analysis between G.C. and Juror 1249142 helpful given that the record does not reveal the ethnicity of Juror 1249142. (See *Bell, supra*, 40 Cal.4th at p. 600; *Lenix, supra*, 44 Cal.4th at p. 622; cf. *People v. Rhoades, supra*, 8 Cal.5th at p. 432, fn. 17.) But even if we consider only the testimony of both jurors, it is clear that Juror 1249142, who had previously served on a jury, was not similarly situated with G.C.

15

reason for exclusion]; *People v. Arellano* (2016) 245 Cal.App.4th 1139, 1161; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1123-1124; *Lenix, supra*, 44 Cal.4th at p. 614.)

The trial court correctly determined that defendant failed to make a prima facie showing of group bias with respect to juror G.C. Accordingly, the *Batson/Wheeler* motion was properly denied.

III

*Instructional Error*

Defendant next argues the trial court erred and violated his constitutional rights by instructing the jury with CALCRIM Nos. 3471 and 3472. Defendant contends the instructions were not supported by the evidence and that giving the instructions impermissibly deprived him of the ability to rely on self-defense or imperfect self-defense, violating his Sixth and Fourteenth Amendment rights to due process and to present a defense. He also contends that if his counsel forfeited this issue by failing to object, he was denied effective assistance of counsel.

The Attorney General argues that defendant forfeited the claim by failing to object. If not forfeited, the Attorney General contends there was no error, or that any error was harmless. Exercising our discretion to reach the merits, we find no reversible error.

A.   *Procedural background*

During a discussion of proposed jury instructions, defense counsel requested instructions on self-defense (CALCRIM No. 505) and voluntary manslaughter/imperfect self-defense (CALCRIM No. 571). The prosecution objected on the grounds of insufficient evidence of self-defense. The court acknowledged that the evidence of self-defense "does not appear very strong," but agreed to give the requested instructions, concluding that the strength of the evidence was an issue for the jury.

If the court was inclined to instruct on self-defense, the prosecution requested that the court also instruct the jury with CALCRIM No. 3471 ("Right to Self-Defense:

16

Mutual Combat or Initial Aggressor") and CALCRIM No. 3472 ("Right to Self-Defense: May Not Be Contrived").  Defense counsel did not object.

The court instructed the jury with CALCRIM No. 3471, modified as follows to delete the references to mutual combat:  "A person who started a fight has a right to self-defense only if:  [¶]  1.  He actually and in good faith tried to stop fighting; [¶] AND [¶] 2.  He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting.  [¶]  If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight."  The court also instructed the jury with the standard form of CALCRIM No. 3472:  "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

B.     *Standard of review*

A trial court must give a requested instruction only if there is substantial evidence to support it.  (*People v. Marshall* (1997) 15 Cal.4th 1, 39.)  "Evidence is '[s]ubstantial' for this purpose if it is 'sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.'  [Citation.]"  (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1049-1050.)  We review the propriety of a trial court's instructions de novo.  (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1378.)  A challenged instruction may not be judged in isolation but must be considered in the context of the instructions as a whole.  (*Ibid*.)  " 'Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions.'  [Citation.]"  (*Ibid*.)

C.     *Analysis*

As a threshold matter, we address the Attorney General's argument that defendant forfeited his contention by failing to object to the instructions below.  We conclude that even if defendant technically forfeited his claim by failing to object, it is within our discretion to address his claim on the merits to determine whether there was an

17

impairment of his substantial rights.  (*People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 916; *People v. Felix* (2008) 160 Cal.App.4th 849, 858.)  We do so here.

Turning to the merits, we reject defendant's claim that the trial court erred by instructing the jury with CALCRIM Nos. 3471 and 3472.  Defendant's argument that the instructions were not supported by substantial evidence relies almost exclusively on his own theory of the case, while essentially ignoring the reasonable inferences that can be drawn in support of the judgment.[9]  When all the evidence is considered, and viewed in the light most favorable to the judgment, we conclude there was substantial evidence to support the challenged instructions.  In particular, the evidence shows that defendant, armed with a loaded shotgun, knocked on the victim's bedroom door and demanded that he "get out."  Still armed with the shotgun, defendant then returned to the living room and waited for the victim.  As the victim walked into the room, unarmed and wearing nothing but underwear, defendant shot him in the chest.  There was no evidence of any previous altercation or quarrel leading up to the deadly encounter.

On this record, a reasonable jury could infer that defendant was the initial aggressor and/or that he provoked the confrontation with the intent to create an excuse to use deadly force.  (See, e.g., *People v. Bolton* (1979) 23 Cal.3d 208, 215; *People v. Salazar, supra*, 63 Cal.4th at pp. 222, 244, 249-250; *People v. Eulian* (2016) 247 Cal.App.4th 1324, 1334; *People v. Enraca* (2012) 53 Cal.4th 735, 761-762.)  Thus, it was not error to instruct the jury with CALCRIM Nos. 3471 and 3472.

---

[9]     We also note that many of the factual assertions in defendant's brief are not supported by any citation to the appellate record, in violation of California Rules of Court, rule 8.204(a)(1)(C).

## IV

### *Sentencing Discretion*

Defendant next contends that we must remand for resentencing because the trial court was unaware of its discretion to impose a lesser, uncharged section 12022.53 firearm enhancement in lieu of the greater, charged section 12022.53, subdivision (d) enhancement found true by the jury. He also contends that his counsel was ineffective in failing to request that the firearm enhancement be reduced and in failing to present factors in mitigation to support striking and reducing the enhancement.

A.    *Legal background*

Section 12022.53 establishes a three-tiered system for firearm enhancements: subdivision (b) provides for a 10-year enhancement for the personal use of a firearm; subdivision (c) provides for a 20-year enhancement for the personal and intentional discharge of a firearm; and subdivision (d) provides for a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death. (*People v. Tirado* (2022) 12 Cal.5th 688, 695 (*Tirado*).)

Effective January 1, 2018, Senate Bill No. 620 (2017-2018 Reg. Sess.) amended section 12022.53, subdivision (h) to give trial courts discretion to strike or dismiss an enhancement in the interest of justice. (*Tirado, supra*, 12 Cal.5th at p. 696.) However, before the California Supreme Court's decision in *Tirado*, Courts of Appeal were split on whether trial courts had the discretion to strike a firearm enhancement found true by the jury and impose a lesser, uncharged enhancement. (*Tirado, supra*, 12 Cal.5th at p. 696; compare *People v. Morrison* (2019) 34 Cal.App.5th 217, 222-223 [holding that a court may strike a section 12022.53, subdivision (d) enhancement and impose a lesser included, uncharged section 12022.53 enhancement in its place] with *People v. Tirado* (2019) 38 Cal.App.5th 637, 642-644, review granted Nov. 13, 2019, S257658, revd. by *Tirado, supra*, 12 Cal.5th at p. 702 [concluding that courts are limited to the binary choice of imposing the charged enhancement or striking/dismissing it].)

In January of 2022, the California Supreme Court resolved this split. In *Tirado*, the court held that "*Morrison* correctly described the scope of a trial court's sentencing discretion under section 12022.53." (*Tirado, supra*, 12 Cal.5th at p. 697.) In short, the Supreme Court rejected the notion that trial courts are faced with a binary choice of either imposing or striking a section 12022.53 enhancement, and held that courts have discretion to impose an uncharged, lesser section 12022.53 enhancement where the facts supporting that enhancement were alleged and found true by the jury. (*Id.* at pp. 699-700.)

B.      *Procedural background*

The information in this case charged defendant with a single firearm enhancement pursuant to section 12022.53, subdivision (d). The jury returned a true finding on the enhancement allegation. During the sentencing hearing, defense counsel asked the trial court to strike the enhancement under section 12022.53, subdivision (h). The trial court acknowledged its discretion to strike the enhancement, but declined to do so, finding no "good cause" to "disregard[] . . . th[e] statutory [sentencing] scheme." The court was not asked to consider imposing a lesser firearm enhancement and there is nothing in the record to suggest the court was aware it had the discretion to impose a lesser, uncharged enhancement.

C.      *Standard of review*

We review a trial court's ruling on a motion to strike a firearm enhancement for abuse of discretion. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116.) In reviewing for abuse of discretion, we are guided by the principle that defendants are entitled to sentencing decisions made by a court exercising informed discretion. (*Tirado, supra*, 12 Cal.5th at p. 694.) "A court acting while unaware of the scope of its discretion is understood to have abused it. [Citation.]" (*Ibid.*) "In such circumstances, . . . the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware

20

that it had such discretion.'  [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

    D.    *Analysis*

Defendant contends he is entitled to remand for resentencing because the trial court was unaware of its discretion to strike the charged enhancement and impose a lesser enhancement under section 12022.53, subdivision (b) or (c).

Although defendant did not ask the trial court to impose a lesser firearm enhancement, we nevertheless conclude that the claim is cognizable on appeal.  At the time of sentencing, the issue of whether courts had discretion to impose a lesser firearm enhancement was relatively new and there was a conflict among the Courts of Appeal. (*Tirado, supra*, 12 Cal.5th at p. 696.)  Further, the overwhelming majority of appellate courts that considered the issue had concluded that courts lacked authority to substitute a lesser enhancement.  (*People v. Tirado, supra*, 38 Cal.App.5th 637, 642-644, rev.gr. and revd. by *Tirado, supra*, 12 Cal.5th 688; *People v. Valles* (2020) 49 Cal.App.5th 156, 166-167, review granted July 22, 2020, S262757, judg. vacated and cause remanded for reconsideration in light of *Tirado, supra*, 12 Cal.5th 688; *People v. Garcia* (2020) 46 Cal.App.5th 786, 790-794, review granted June 10, 2020, S261772, judg. vacated and cause remanded for reconsideration in light of *Tirado, supra*, 12 Cal.5th 688; *People v. Yanez* (2020) 44 Cal.App.5th 452, 458-460, review granted Apr. 22, 2020, S260819, judg. vacated and cause remanded for reconsideration in light of *Tirado, supra*, 12 Cal.5th 688.)  Thus, we shall exercise our discretion to address the merits.  (*People v. Morrison, supra*, 34 Cal.App.5th at p. 224; *GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6; *People v. Smith* (2003) 31 Cal.4th 1207, 1215.)

On the merits, the Attorney General contends defendant's claim should be denied because the trial court is presumed to have known and applied the applicable law.  We disagree.  The general presumption that a trial court is presumed to have followed

21

established law does not apply where, as here, the law in question was unclear or uncertain when the lower court acted. (*People v. Jeffers* (1987) 43 Cal.3d 984, 1000; accord, *People v. Diaz* (1992) 3 Cal.4th 495, 567; *People v. Chambers* (1982) 136 Cal.App.3d 444, 457.) Further, the trial court's comments at the hearing suggest it was unaware it had discretion to impose a lesser firearm enhancement. The court recognized it had discretion to strike the charged enhancement, but otherwise described the case as governed by a "very straightforward sentencing scheme." The court continued: "It's all codified by the California [L]egislature. Twenty-five to life is the codified sentence for the first-degree murder, . . . and the enhancement carries with it . . . an additional sentence . . . expressly stated by the [L]egislature to be consecutive. . . . [¶] So the sentence will be two consecutive 25 to life terms for a total aggregate term of 50 years to life." In contrast, there is nothing to suggest the court was aware of its discretion to impose a lesser enhancement. On this record, we cannot presume that the trial court was aware of the full scope of its discretion. (See *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1093.)

The Attorney General argues that even if the trial court was unaware of its discretion, remand is unnecessary because the record clearly indicates the trial court would have imposed the same section 12022.53, subdivision (d) enhancement. We are not persuaded. The Attorney General relies on a comment made by the court in response to defense counsel's argument that sentencing should be about rehabilitation: "Sometimes, when a crime is so egregious, and a defendant has been given so many opportunities to succeed, the best the [c]ourts can do is take the individual off the street for the longest period of time possible in order to assure public safety." However, this statement merely explained the court's reasoning for not striking the enhancement in its entirety. Construed in context, this statement does not "clearly indicate" that the trial court would have imposed the same section 12022.53, subdivision (d) enhancement even if the court had been aware it could impose a lesser one. (*People v. McDaniels* (2018)

22 Cal.App.5th 420, 427; see *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.) Thus, we conclude it is appropriate to remand this matter to allow the trial court to exercise its sentencing discretion in light of *Tirado, supra*, 12 Cal.5th 688. We express no opinion regarding how the court should exercise that discretion on remand.

In light of our decision to remand for resentencing, it is unnecessary for us to address defendant's claims of ineffective assistance of counsel.

### DISPOSITION

We vacate the sentence and remand this case for the limited purpose of allowing the trial court to exercise its discretion as to whether to strike the section 12022.53, subdivision (d) enhancement and instead impose a lesser, uncharged enhancement. If the court reduces the enhancement, it shall resentence defendant accordingly and issue a new abstract of judgment. If it does not reduce the enhancement, it shall reinstate defendant's sentence. In all other respects, the judgment is affirmed.


       KRAUSE       , J.


We concur:


     RENNER     , Acting P. J.


     EARL     , J